**PACIFIC POWER & LIGHT CO. et al. v.
FEDERAL POWER COMMISSION.
No. 8803.**

Circuit Court of Appeals, Ninth Circuit.
May 8, 1940.

John A. Laing and Henry S. Gray, both of Portland, Or., A. J. G. Priest, R. A. Henderson, and Sidman I. Barber, all of New York City (Laing & Gray and Frederic A. Fisher, all of Portland, Or., and Reid & Priest and Harry A. Poth, Jr., all of New York City, of counsel), for petitioners.

David W. Robinson, Gen. Counsel, Federal Power Commission, Louis W. McKernan, Principal Atty., and Howell Purdue and Robert L. Russell, Attys., Federal Power Commission, all of Washington, D. C., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The proceeding is brought under § 313(b) of the Federal Power Act, 16 U.S.C.A. § 825*l*(b), to review an order of the Federal Power Commission denying the application of the petitioners, Pacific Power

& Light Company and Inland Power & Light Company, for approval of the transfer to Pacific of Inland's properties and assets. Earlier in the proceeding this court held the order reviewable, 98 F.2d 835, and on certiorari its decision was affirmed, Federal Power Comm. v. Pac. Power & L. Co., 307 U.S. 156, 59 S.Ct. 766, 83 L.Ed. 1180. The matter is now before us on the merits.

Inland, an Oregon corporation, owns three hydro-electric plants in Oregon and Washington, two of which are operated under license of the Commission, the third under permit of the Secretary of the Interior. It is not engaged in retail distribution of electric energy. Pacific is a Maine corporation which generates and distributes electric power in Washington and Oregon, and has facilities for interstate transmission of power. It owns all of Inland's stock.[1] One of the three Inland projects is operated under lease by Pacific, and the latter company purchases the entire output of a second project. The power of Inland's remaining and much its largest project is sold at wholesale to the Northwestern Electric Company, an affiliate of Pacific, and to Washington Gas & Electric Company. The physical properties of Pacific and Inland are interconnected.

In May, 1937 the two companies agreed upon a transfer to Pacific of all the property, assets and licenses of Inland, subject to the approval of the Federal Power Commission as required by §§ 8 and 203(a) of the Federal Power Act, 16 U.S.C.A. §§ 801, 824b(a). Authorization for the transfer was obtained from the Public Utilities Commission of the state of Oregon and the Department of Public Service of the state of Washington, both of which bodies found that the proposed consolidation is reasonable and in the public interest. The Federal Power Commission, on an ultimate finding that applicants had failed to establish that the proposed merger is consistent with the public interest, declined to give its approval.

Petitioners contend (1) that the finding of the Commission in this respect is not supported by substantial evidence; and (2) that the Commission erred in holding that § 203(a) requires an affirmative showing that benefit to the public will result from

---

[1] Prior to May, 1937 Inland was indebted to Pacific on a note account, but this indebtedness was canceled and Pacific converted its relationship of stockholder and creditor of Inland into that of stockholder only.

the proposed merger.[2] A third proposition argued is that a denial of approval under the circumstances shown operates to deprive petitioners of their property and rights without due process of law. For reasons presently to appear we consider it appropriate to notice the second only of these contentions.

In the course of its opinion the Commission said that "in appraising the facts with respect to the proposed merger, we cannot find that any substantial advantage or benefit to the public will result therefrom." Further, that "it is not sufficient for an applicant under Section 203(a) of the Act merely to show that no serious harm may be apprehended as a result of the proposed merger or that such merger is a matter of indifference insofar as the public interest may be affected. The burden is upon the applicant to show that the proposal is consistent with the public interest. This concept requires something more than a showing of convenience to the applicant, and can reasonably be interpreted as indicating that the Congress intended that there be a showing that benefit to the public will result from the proposed merger of facilities before it should receive Commission approval. The Commission is charged with the responsibility and active duty of making an affirmative finding that a proposed merger is consistent with the public interest. This responsibility carries with it the duty to deny an application for approval of the merger of facilities of two operating companies when it can not be shown that good and sufficient reason for the granting of the application exists and that the consuming public will be benefited thereby." In a separate opinion Commissioner Manly disagreed with this view, although concurring in the denial of the application.

We think the Commission ascribes a meaning to the statute not borne out by its language. The section provides that "after notice and opportunity for hearing, if the Commission finds that the proposed disposition, consolidation, acquisition, or control will be consistent with the public interest, it shall approve the same." The phrase "consistent with the public interest" does not connote a public benefit to be derived or suggest the idea of a promotion of the public interest. The thought conveyed is merely one of compatability. Congress resorted to this language rather than to the use of the stock term "public convenience or necessity", or to such phrases as "in furtherance of" or "will promote the public interest" used in its interstate commerce legislation (later considered); and the language employed ought to be construed to mean no more than it says. It is enough if the applicants show that the proposed merger is compatible with the public interest. The Commission, as a condition of its approval, may not impose a more burdensome requirement in the way of proof than that prescribed by law.

The statute, it is true, prohibits the consolidation of the facilities of public utility companies without prior approval; but it does not disclose a policy hostile to all such mergers or indicate that Congress looked upon them as presumptively harmful. We see no more in the prohibition than the purpose of insuring against public disadvantage through the requirement of a showing that mergers of this sort will not result in detriment to consumers or investors or to other legitimate national interests. The Federal Power Act, 16 U.S.C.A. § 791a et seq., forms an integral part of the Public Utility Act of 1935, 15 U.S.C.A. § 79 et seq.; and Title I of that act was designed to bring about a simplification of corporate structures in the utility field through compulsory consolidations and mergers under named conditions. Consult particularly sections 10(b) and 11

2 § 203 (a) of the Federal Power Act is as follows: "No public utility shall sell, lease, or otherwise dispose of the whole of its facilities subject to the jurisdiction of the Commission, or any part thereof of a value in excess of $50,000, or by any means whatsoever, directly or indirectly, merge or consolidate such facilities or any part thereof with those of any other person, or purchase, acquire, or take any security of any other public utility, without first having secured an order of the Commission authorizing it to do so. Upon application for such approval the Commission shall give reasonable notice in writing to the Governor and State commission of each of the States in which the physical property affected, or any part thereof, is situated, and to such other persons as it may deem advisable. After notice and opportunity for hearing, if the Commission finds that the proposed disposition, consolidation, acquisition, or control will be consistent with the public interest, it shall approve the same." 49 Stat. 849–850, 16 U.S.C.A. § 824b(a).

(b) of the Public Utility Holding Company Act of 1935, 49 Stat. 819–821, 15 U.S.C.A. §§ 79j(b) 79k(b).

■ The Commission properly requires applicants to make a full disclosure of all material facts. The burden is on them of showing affirmatively that the acquisition or merger is consistent with the public interest. The Commission must necessarily take an over-all view and in many cases it will, as its counsel says, be called upon to weigh considerations pro and con. It is beyond our immediate purpose to inquire into the precise nature of the interests to be safeguarded by the Commission in passing upon these applications.[3] Suffice it to say that the statute does not require a showing that positive benefit to the public will result; and as this court has heretofore said (98 F.2d 835, 837, 838), the section recognizes the existence of a substantive right to have the Commission's approval upon the making of the statutory showing.

In a few state decisions the courts have been concerned with a similar question, and the views expressed in them are in general in line with our own. Electric Public Utilities Co. v. Public Service Com., 154 Md. 445, 140 A. 840; Northern Pennsylvania Power Co. v. Public Utility Comm., 333 Pa. 265, 5 A.2d 133; State ex rel. City of St. Louis v. Public Serv. Comm., 335 Mo. 448, 73 S.W.2d 393.

■ The Commission contends that its construction of the statute has become settled by force of its own earlier decisions. However, we find nothing in the prior rulings of that body to warrant the claim of presumptive validity usually attendant upon a long-established administrative interpretation. The earliest of the supposed pronouncements is in the matter of Northern Pennsylvania Power Co. and Metropolitan Edison Co. (Docket No. I. T.-5000), decided in December, 1936. The Commission there said that, in order to resolve the question of public interest, recourse must be had to the broad purposes of the Federal Power Act in determining the standards to be applied. "Such," said the Commission, "is the clear meaning of the language used by the Supreme Court in Texas et al. v. United States, 292 U.S. 522, 54 S.Ct. 819, 78 L.Ed. 1402, construing a section of the Interstate Commerce Act which provides as the condition of approval of proposed acquisitions of property a finding by the Interstate Commerce Commission that such acquisitions 'will be consistent with the public interest'." After quoting from page 531 of the court's opinion, in 292 U.S., 54 S.Ct. 819, 78 L.Ed. 1402, the Commission went on to say that "the court's language in the above case gives this commission not the criteria, but the guide and method by which it may ascertain and set up those criteria, to wit: by reference to the context and purposes of the act."

The statute discussed by the court in the case referred to is § 5, subs. (4)(a) and (4)(b), of the Interstate Commerce Act as amended by the Emergency Railroad Transportation Act, 1933, 49 U.S.C.A. § 5(4)(a, b). That statute authorizes the Interstate Commerce Commission to approve proposed consolidations or other acquisitions of carriers if "in harmony with and in furtherance of the plan for the consolidation of railway properties established pursuant to paragraph (3), and will promote the public interest." As will be seen, the Commission wrongly quoted the verbiage of the underlying statute with which the court was concerned. It should be obvious that the language used by Congress in these two acts is totally unlike. Nor is the analogy between them otherwise complete.

A later ruling cited by the Commission is its order in the matter of the application of Newport Electric Corp. and Citizens' Utility Co., dated November 24, 1937 (Docket No. I. T.-5475), affirmed Newport Electric Corporation v. Federal Power Comm., 2 Cir., 97 F.2d 580. The order contains no discussion of the statute.

■ We refrain from commenting on the subsidiary findings of the Commission which are claimed to support its ultimate finding that the proposed merger is not consistent with the public interest. Presumably the Commission's conclusion relative to the sufficiency of the showing was

---

[3] Subdivision (b) of § 203 provides: "The Commission may grant any application for an order under this section in whole or in part and upon such terms and conditions as it finds necessary or appropriate to secure the maintenance of adequate service and the coordination in the public interest of facilities subject to the jurisdiction of the Commission. The Commission may from time to time for good cause shown make such orders supplemental to any order made under this section as it may find necessary or appropriate."

colored by the erroneous view of the nature of the burden cast on the applicants; and it is not at all plain that the same result would have been reached had the statute been given its proper interpretation. Hence it is appropriate that the Commission further consider the showing in the light of the views here expressed.

The order is set aside and the matter returned to the Commission for further consideration in harmony with this opinion.