Samuel W. RATTRAY, Jr.,
Plaintiff–Appellant,

v.

CITY OF NATIONAL CITY; City of National City Police Department; Terry Hart, individually, and as Chief of Police; Thomas W. Fowler, individually, and as Captain of the Police Department, San Diego, Defendants–Appellees.

No. 92–55791.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1993.

Decided Oct. 7, 1994.

As Amended on Denial of Rehearing;
Suggestion for Rehearing En Banc
Rejected March 21, 1995.

Marie A. Backes and Peter G. Friesen, Backes & Friesen, San Diego, CA, for plaintiff-appellant.

Richard R. Terzian and Margaret L. Oldendorf, Adams, Duque & Hazeltine, Los Angeles, CA, for defendants-appellees.

Before: HUG, SCHROEDER and BOOCHEVER, Circuit Judges.

Opinion by Judge SCHROEDER; Dissent by Judge HUG.

## ORDER

The proposed Brief of Amici Curiae in Support of Defendant–Appellees' Petition for Rehearing and Suggestion for Rehearing En Banc is ordered filed.

A majority of the panel as constituted above has voted to deny the petition for rehearing. A majority of the panel has not voted to grant the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed. R.App.P. 35.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

The Opinion filed on October 7, 1994 [36 F.3d 1480] is modified accordingly:

[Editor's Note: Modifications incorporated for purposes of publication].

## OPINION

SCHROEDER, Circuit Judge:

Samuel Rattray, Jr., a former National City police officer, sued the city after his employment was terminated. He raised claims of invasion of privacy under California Penal Code § 632, intentional discrimination under § 1983 and Title VII, and defamation. The district court granted a directed verdict in favor of the defendants on Rattray's privacy claims and the remaining claims went to trial. The jury found against Rattray on his § 1983 claim and the court did the same on the Title VII claim. The jury entered a verdict in Rattray's favor on the defamation claim, but the district court granted a new trial and subsequently granted summary judgment for the city. Rattray now appeals the district court's judgment in favor of the defendants on all claims. We reverse the court's disposition of Rattray's invasion of privacy claim, and affirm its judgment on Rattray's discrimination claims. With respect to Rattray's defamation claim, we affirm the district court's grant of a new trial, but reverse its grant of summary judgment before the second trial.

### I. *Background*

Samuel Rattray was employed by the City of National City, California, as a police officer from 1983 to 1985. Rattray, who is black, was accused of sexually harassing a female coworker, Mary Figueroa. Figuer-

oa's husband complained that Rattray frequently engaged Figueroa in flirtatious conversation, suggesting that she should give Rattray her Corvette and that she "had a place to go" if her husband ever "got tired of her." In the course of investigating this complaint, Captain Fowler of the National City Police Department ordered that Figueroa attempt to engage Rattray in a flirtatious conversation, and that she secretly record the incident. Figueroa subsequently taped a conversation between herself and Rattray.

After reviewing Ms. Figueroa's tape, plaintiff's supervisors concluded that Rattray's statements did not appear to rise to the level of sexual harassment, but that he should be counseled that such conversations were inappropriate. Captain Fowler and Lieutenant Davis consequently met with Rattray for that purpose. During this counseling session, Captain Fowler asked Rattray if he had ever joked with Figueroa about her husband, or told her that she "had a place to go" if she left him. Rattray denied making such comments. Fowler thereafter recommended that Rattray be terminated for dishonesty. After receiving reports of the incident from Fowler and Davis, then-Chief of Police Terry Hart conducted some further investigation, and ultimately decided to terminate Rattray. Plaintiff resigned before this could occur.

Plaintiff filed suit in 1986 against National City, alleging intentional race discrimination under both Title VII and 42 U.S.C. § 1983, and a pendent state claim of invasion of privacy based on the secret recording of his conversation with Figueroa.

After this suit had been filed, Chief Hart publicly stated that plaintiff had resigned, facing termination for dishonesty, and that race had had nothing to do with the decision. A local newspaper printed Chief Hart's statements that "he could not discuss the specific violation made by Rattray, but that the department has 'clear, convincing and strong information and evidence about something he did and he lied about it.'" Plaintiff amended his complaint to add a claim for defamation, based on these statements. At trial, Rattray introduced evidence that a white officer caught lying was not disciplined, and that when Figueroa's husband complained that another white officer was harassing his wife, no surveillance followed.

The district court granted a directed verdict for the defendants on the invasion of privacy claim, and set the remaining claims for trial. A jury reached a verdict for defendants on plaintiff's § 1983 claim, and a $300,000 verdict for the plaintiff on his defamation claim. Following the jury's § 1983 verdict, the judge ruled for the defendants on plaintiff's Title VII claim.

Defendants then moved for a new trial or for a judgment notwithstanding the verdict on plaintiff's defamation claim. The judge ruled that there had been sufficient evidence to withstand defendants' motion for judgment notwithstanding the verdict, and denied that motion. Nevertheless, the judge granted defendants' motion for a new trial on the ground that the jury's verdict had been against the great weight of the evidence.

At the beginning of the second trial on plaintiff's defamation claim, the district court informed plaintiff that he would be required to prove the actual falsity of Chief Hart's statements by clear and convincing evidence, rather than by a preponderance of the evidence. Plaintiff conceded that he could not meet this heightened standard of proof, and the district court therefore entered summary judgment in favor of the defendants. Plaintiff now appeals the court's adverse judgment on all claims.

## II. *Invasion of Privacy*

Plaintiff first argues that the district court erred in dismissing his invasion of privacy claim under California Penal Code § 632. Section 632 provides that "(a) every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records such confidential communication ... shall be punishable by fine ... or by imprisonment." This prohibition, however, is subject to the proviso of § 633, which states that notwithstanding the prior section, any person acting as or at the direction of a law enforcement officer may "overhear[ ] or record[ ] any communication that they could lawfully overhear

or record prior to the effective date of this chapter."

■ The district court relied upon the § 633 proviso to dismiss plaintiff's claim, ruling that because police captains could secretly record the private conversations of their employees by "wiring" one party to the conversation prior to the enactment of § 633,[1] the actions of Rattray's supervisors did not run afoul of § 632 in this case. The legislative history of § 633 and the dictates of the California Constitution, however, compel a conclusion that § 633 protects only electronic recording and eavesdropping in the course of criminal investigations, and not police recordings of their own employees as a matter of internal discipline.

The dissent's plain language reading of § 633 ignores the equally plain language of § 630, which identifies the California legislature's findings and intent in enacting the statute. The statement of purpose in § 630 strongly indicates that § 633 was intended solely to permit law enforcement officers to continue to use electronic devices in criminal investigations. Section 630 first explains that in the view of the California legislature, technological advances necessitated a new statute to protect the important privacy rights of California citizens. In enacting this protective statute, however, the legislature "recognize[d] that law enforcement agencies have a legitimate need to apply modern listening devices and techniques *in the investigation of criminal conduct and the apprehension of law breakers*," and therefore exempted legitimate law enforcement activity from the statute's reach. *See* Cal.Penal Code § 630 (emphasis added).

The predecessor to § 633 further clarifies the proper scope of the modern statute. California Penal Code § 653(h) provided that:

Any person who ... installs ... a dictograph in any ... room ... without consent of the occupant ... is guilty of a misdemeanor; provided that nothing herein shall prevent the use and installation of dictographs by a regular salaried peace officer expressly authorized thereto ... when such use and installation are necessary in the performance of their duties in detecting crime and in the apprehension of criminals.

There is nothing in the language or history to indicate that in reenacting former § 653(h) in current §§ 632 and 633, the California legislature intended to shift the statute's focus away from law enforcement activity, so as to subject police employees, alone among all public or private employees in California, to covert tape recordings.

Moreover, the California Supreme Court has held that the California legislature may not discriminate among its citizens in granting important privacy rights without a compelling justification, consistent with the equal protection clause of the California Constitution. In *Long Beach City Employees Ass'n v. City of Long Beach*, 41 Cal.3d 937, 227 Cal.Rptr. 90, 719 P.2d 660 (1986), for example, the California Supreme Court held that a statute protecting private and public safety employees, but not other public employees, from having to submit to polygraph examinations as a condition of employment denied the complaining public employees equal protection of the laws. Because the right to privacy is a fundamental right enshrined in the California Constitution, the *Long Beach* court applied strict scrutiny to the classification at issue, and concluded that there was no "compelling reason" for discriminating between public and private employees in the allocation of this right. The court therefore enjoined the government from subjecting its employees to the unwanted polygraph examinations.

■ The situation facing the *Long Beach* court is similar to the one at bar. Having one's personal conversations secretly recorded may well infringe upon the right to privacy guaranteed by the California Constitution. *See White v. Davis*, 13 Cal.3d 757, 773–776, 120 Cal.Rptr. 94, 533 P.2d 222 (1975); *see also State v. Glass*, 583 P.2d 872, 879–80 (Alaska 1978) (recording violated analogous privacy provisions of the Alaska

---

1. As discussed below, the predecessor to §§ 632 and 633 explicitly prohibited anyone, including police captains, from secretly recording employee conversations by installing a dictograph in a room without consent of the room's occupant. *See* Cal.Penal Code § 653(h) (repealed 1967).

Constitution). Neither the California legislature nor National City have articulated any reason, compelling or otherwise, for exempting only police employees from the privacy rights conferred by § 632, and we can perceive none. We therefore construe the statute, as we must, to avoid this constitutional issue. *See, e.g., Gomez v. United States,* 490 U.S. 858, 864, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989) ("[I]t is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question."); *Association for Retarded Citizens v. Dept. of Development Services,* 38 Cal.3d 384, 211 Cal.Rptr. 758, 762–64, 696 P.2d 150, 155–56 (1985) (en banc) (statute susceptible of two interpretations should be construed to avoid doubt about constitutional validity).

The record suggests that the district court may have agreed with the defendants that Rattray's invasion of privacy claim should also be dismissed under California Government Code §§ 815.2 and 820.2, which provide that public employees and entities are immune from liability "resulting from ... act[s] or omission[s] where the act or omission was the result of the exercise of discretion vested in [them]." Cal.Gov't Code § 820.2.[2]

Sections 815.2 and 820.2 are a part of the California Tort Claims Act, and limit public employees' liability for claims arising out of that act. Those provisions have never been interpreted as a blanket bar to liability for violations of other statutory provisions. In the cases defendants cite, rather, the provisions have been raised as defenses to common law tort claims. *See, e.g., Johnson v. State of California,* 69 Cal.2d 782, 73 Cal. Rptr. 240, 251, 447 P.2d 352, 363 (1968) (personal injury claim alleging State's negligence); *Newton v. County of Napa,* 217 Cal. App.3d 1551, 266 Cal.Rptr. 682, 688 (1990) (negligent infliction of emotional distress, battery, false imprisonment, and invasion of privacy claims).

The California cases make clear, moreover, that although §§ 815.2 and 820.2 may limit

liability for discretionary acts such as a government agency's decision to investigate, subsequent illegal actions taken in the course of carrying out such a discretionary decision are not similarly shielded. In *Johnson,* the California Supreme Court noted that although a determination of which governmental actions are "discretionary" and therefore immune from liability would have to occur on a case by case basis, the distinction "between the 'planning' and 'operational' levels of decision making ... offers some basic guideposts" for making that determination. 69 Cal.2d at 793–94, 73 Cal.Rptr. at 248, 447 P.2d at 360. In general, the court suggested, policy decisions would be protected by § 820.2, while the steps taken in implementing those decisions, though involving an exercise of discretion at some level, would not be. *Id.* 73 Cal.Rptr. at 246–49, 447 P.2d at 358–61. Thus, in that case, the State of California could be held liable for the negligent actions of a placement officer of the Youth Authority in failing to warn foster parents that the child placed with them had a history of violence and cruelty.

Following *Johnson,* the Court of Appeal for the First District held that officers of the Napa County Probation Department and Child Protective Services were immune under § 820.2 only for the discretionary decision to investigate an allegation of child abuse, and any subsequent actions "necessary to make a meaningful investigation." 266 Cal.Rptr. at 687–88. The court therefore remanded the case for a determination of whether or not the actions upon which plaintiffs' negligent infliction of emotional distress claim was based were "necessary" to the investigation. The court also reversed the trial court's grant of a demurrer on plaintiffs' battery and false imprisonment claims, noting that "there can be no immunity for a battery or false imprisonment committed in the course of an investigation of child abuse." *Id.* at 688. *See also Smith v. County of Kern,* 20 Cal.App.4th 1826, 25 Cal.Rptr.2d 716, 721 (1994) ("Even if the initial agreement to perform that [blood] test involved an

---

2. Section 815.2 protects public entities from liability for the acts of their employees where the

employees themselves enjoy immunity.

exercise of discretion, the actual performance of the scientific test was not an immune exercise of discretion [under § 820.2].”); *Mann v. State,* 70 Cal.App.3d 773, 139 Cal. Rptr. 82, 84 (1977) (“once [the officer] decided to investigate, any negligence on his part in his ministerial performance of the investigation was clearly beyond the protection of the statutory discretionary immunity”).

 Under the analysis employed by the California courts, the decision secretly to tape record Rattray’s private conversations in the course of investigating a complaint of sexual harassment was not a discretionary decision shielded by §§ 815.2 and 820.2. We therefore reverse the district court’s dismissal of Rattray’s invasion of privacy claim.

### III. *Intentional Discrimination*

Rattray contends that the district court erred in instructing the jury on plaintiff’s burden of proof in his § 1983 claim. The district court gave a modified version of the Ninth Circuit’s Model Instruction 14.04E on intentional discrimination.[3] The instruction given provided:

> The second element of plaintiff’s claim is that he was deprived of a federal right which is to be free of discrimination against him because of his race. In deciding whether defendants intentionally discriminated because of plaintiff’s race, your job is to determine what motivated the person or persons who decided to take employment action against him.
>
> When plaintiff has offered evidence from which you could conclude that defendants discriminated against him because of his race, defendants may show that they had a reason other than race for their actions. They may also answer plaintiff’s case with evidence which shows a practice of nondiscriminatory decision making.
>
> If defendants have offered evidence that they took employment action against plaintiff for reason other than race, whether or not you agree with their reason, plaintiff must then show that this was not the genuine reason for the action.

In order for you to find for plaintiff, you must find from all of the evidence that plaintiff has proved by a preponderance of the evidence that defendants took employment action against him primarily because of his race, even if that was not the only reason.

The instruction was based upon the district court’s understanding of the United States Supreme Court’s decisions in *Texas Dep’t of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1981), setting forth the plaintiff’s burden in an intentional discrimination case. During the in-chambers discussion settling the instruction, Rattray objected to the district court’s use of the word “primarily” in the last sentence and asserted that he need prove only that race was a “substantial reason” for the employment action, rather than the primary one.

On appeal, Rattray relies upon *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The Supreme Court held in that case that if a plaintiff proved that a protected characteristic played a substantial part in the employment decision, the burden should shift to the employer to show that it would have made the same decision in the absence of any illegal animus. *Id.*

 *Price Waterhouse* is a mixed-motive case, in which the plaintiff asserted that the employment decision “was the product of both legitimate and illegitimate motives.” *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1109 (9th Cir. 1991). Rattray did not present that theory at trial. His contentions at that time were based on a single-motive theory under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep’t of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In such a single-motive case, the ultimate question is “whether it is more likely than not that the employer’s conduct was motivated solely by intentional discrimination.” *Sischo–Nownejad,* 934 F.2d

---

**3.** Defendants had requested that the jury be in- structed according to 14.04E.

at 1110. The instruction as given did not so depart from the proper formulation of a plaintiff's burden in a single-motive case as to justify reversal.

We therefore affirm the jury verdict on the § 1983 claim, and the judgment of the district court on the Title VII claim that paralleled the jury's verdict.

## IV. *Defamation*

Rattray contends that the district court erred in granting the defendants' motion for a new trial on plaintiff's defamation claim, after a jury had returned a verdict in plaintiff's favor. In addition, he contends that the district court erred in requiring him to prove the actual falsity of Chief Hart's statements by clear and convincing evidence at his second defamation trial. We affirm the grant of a new trial, but reverse the district court's grant of summary judgment in favor of the defendants at the second trial.

### A. *New Trial Motion*

■ Rattray's defamation case is based on the allegedly defamatory statement that he was terminated for dishonesty, a statement which directly relates to his status as a public official. *See, e.g., McKinley v. Baden,* 777 F.2d 1017 (5th Cir.1985) (city police officer "public official" for defamation law purposes); *Gray v. Udevitz,* 656 F.2d 588 (10th Cir.1981) (same); *Gomes v. Fried,* 136 Cal.App.3d 924, 186 Cal.Rptr. 605, 610 (1982). In order to prevail, then, Rattray had to prove by clear and convincing evidence that Hart acted with "actual malice" when he made the statements in question. *Harte–Hanks Comm. v. Connaughton,* 491 U.S. 657, 686, 109 S.Ct. 2678, 2695, 105 L.Ed.2d 562 (1989); *Bose Corp. v. Consumers Union,* 466 U.S. 485, 511, 104 S.Ct. 1949, 1965, 80 L.Ed.2d 502 (1984); *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964). "Actual malice consistently has been deemed subjective in nature, provable only by evidence that the defendant 'realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement.'" *Newton v. Nat'l Broadcasting Co.,* 930 F.2d 662, 668 (9th Cir.1990) (citing *Bose,* 466 U.S. at 511 n. 30, 104 S.Ct.

at 1965 n. 30), *cert. denied,* 502 U.S. 866, 112 S.Ct. 192, 116 L.Ed.2d 152 (1991).

■ In granting defendants' motion for a new trial, the district court stated that while "the court finds that the circumstantial evidence ... is sufficient to withstand a motion for JNOV, ... the jury verdict is clearly against the great weight of the evidence presented at trial." A district court has discretion to grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent ... a miscarriage of justice." *Roy v. Volkswagon of America, Inc.,* 896 F.2d 1174, 1176 (9th Cir.1990) (quoting *Hanson v. Shell Oil Co.,* 541 F.2d 1352, 1359 (9th Cir.1976), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2042, 114 L.Ed.2d 126 (1991)). When reviewing the district court's decision to grant a new trial in this case, we are mindful of the court's particular responsibility in defamation cases to review independently the evidence in order to ensure that free speech is not chilled by the threat of unwarranted jury awards. *See Harte–Hanks,* 491 U.S. 657, 109 S.Ct. 2678; *Newton,* 930 F.2d 662.

■ Viewing all of the evidence in this light, it is apparent that the district court did not err in granting defendants' motion for a new trial. In this case, any evidence that Chief Hart "realized that his statement was false or ... subjectively entertained serious doubt as to the truth of his statement" was very weak. *Bose,* 466 U.S. at 511 n. 30, 104 S.Ct. at 1965 n. 30. Defendants submitted evidence that prior to stating that Rattray was terminated for dishonesty, Chief Hart had received investigatory reports from Lieutenant Davis and Captain Fowler detailing Figueroa's complaints, the contents of Figueroa's tape recording, and a report of their interview with Rattray, in which Rattray denied ever making comments to Figueroa about her husband. Lieutenant Fowler explicitly stated that Rattray had lied in the face of "convincing evidence" to the contrary, and that "Officer Rattray was not truthful for self-serving purposes. His failure to tell the truth is compounded in that he willingly and knowingly attempted to compromise the honesty and integrity of PSO Figueroa." In addition to reading these re-

ports, Chief Hart conducted his own investigation, interviewing both Rattray and Figueroa about the events in question, and listening to the tape recorded conversation between the two. In short, it appears from the evidence that, far from being subjectively aware that his statements were probably false, Chief Hart was likely convinced, and not unreasonably so, of their truth. We therefore affirm the district court's grant of a new trial.

### B. Standard of Proof of Falsity

■ Finally, Rattray contends that the district court erred in requiring him to prove the actual falsity of the allegedly defamatory statements by clear and convincing evidence. This is an issue of first impression in this circuit. The only circuit that has decided the question held that proof of the actual falsity of allegedly defamatory statements need only be proven by a preponderance of the evidence. *Goldwater v. Ginzburg,* 414 F.2d 324, 341 (2d Cir.1969), *cert. denied,* 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695 (1970). We adopt the holding of the Second Circuit.

■ According to established practice, all elements of a defamation claim, with the exception of actual malice in the case of a public official, must be proved by a preponderance of the evidence. *Devitt, Blackmar, & Wolff,* 3 Federal Jury Practice & Instructions § 84.08 (4th ed. 1987); *see also Goldwater v. Ginzburg,* 414 F.2d at 341. In *New York Times,* the Supreme Court explicitly held that a public official suing for defamation must prove "actual malice" by clear and convincing evidence. 376 U.S. at 285–86, 84 S.Ct. at 728–29. The Court derived this requirement from the constitutional guarantee enshrined in the First Amendment, which generally protects even untrue statements about public figures or matters of public concern. *Id.; Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). An individual may speak about such matters without fear of an adverse defamation judgment, absent actual knowledge that the statements were false, or willful blindness to the truth. *Harte–Hanks,* 491 U.S. at 683–85, 109 S.Ct. at 2693–94; *St. Amant v. Thompson,* 390 U.S. 727, 730, 88

S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); *New York Times,* 376 U.S. at 279–86, 84 S.Ct. at 725–29.

In evaluating the plaintiff's burden in this case, the district court in effect adopted the position taken in a concurring Fifth Circuit opinion. In *Firestone v. Time, Inc.,* 460 F.2d 712 (5th Cir.), *cert. denied,* 409 U.S. 875, 93 S.Ct. 120, 34 L.Ed.2d 127 (1972), one judge stated that although the Supreme Court had not explicitly addressed the issue, a requirement that the actual falsity of the allegedly defamatory statements be proved by clear and convincing evidence was implicit in the *New York Times* decision. *Id.* at 722–28 (Bell, C.J., specially concurring). We disagree.

■ The Second Circuit noted in *Goldwater v. Ginzburg* that "[t]here is nothing in *New York Times v. Sullivan* " to support the "novel theory" that other elements of a defamation claim must be proved by clear and convincing evidence. 414 F.2d at 341. The *New York Times* requirement of actual malice is designed to protect the constitutional rights of those who wish to speak on matters of public concern. The *New York Times* Court effectively held that the requirement that allegedly defamed public officials prove malice by clear and convincing evidence, when added to the preexisting common law requirements calling for proof of the other elements of a defamation claim by a preponderance of the evidence, adequately protects those constitutional interests. We agree with and follow that judgment.

We also note that the types of evidence necessary to prove actual malice will often be very different from evidence of falsity. While malice will often involve evidence that a particular speaker willfully failed to investigate a charge, or willfully shielded himself from evidence of the truth, *see, e.g., Harte–Hanks,* 491 U.S. at 682–85, 109 S.Ct. at 2693–95, the ultimate truth or falsity as to a particular charge may be essentially unprovable. *Cf. New York Times,* 376 U.S. at 279, 84 S.Ct. at 725–26 (noting difficulty of proving statement's actual truth or falsity). In cases such as the one at bar, where the statement relates to an individual's state of mind, "clear and convincing evidence" may be very diffi-

cult indeed to come by. In such a case, a requirement that defamation plaintiffs prove the actual falsity of the statements at issue by clear and convincing evidence would serve only as a constitutionally unnecessary barrier to recovery. We therefore reverse the district court's grant of summary judgment in favor of the defendant in Rattray's second trial on defamation.

### V. *Conclusion*

In sum, we reverse the district court's disposition of Rattray's invasion of privacy claim, as the defendants in this case are not shielded by either California Penal Code § 633 or California Government Code §§ 815.2 and 820.2. We also reverse the district court's ultimate grant of summary judgment in favor of the defendants on Rattray's defamation claim, because the actual falsity of allegedly defamatory statements need only be proved by a preponderance of the evidence. Finally, we affirm the district court's judgment in favor of the defendants on Rattray's intentional discrimination claims under § 1983 and Title VII.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED.**

HUG, Circuit Judge, Dissenting:

I would affirm the judgment of the district court; and, therefore, I respectfully dissent. I agree with the opinion except for the discussion in Part II and Part IV–B and the conclusion in Part V.

### I.

### *INVASION OF PRIVACY*

The district court dismissed the invasion of privacy claim that was based on a violation of the California Penal Code. The majority holds this to be error. I disagree, and the reason succinctly stated is as follows. The civil invasion of privacy claim is based upon the alleged violation of a criminal statute. The plain language of the statute provides an exemption for police officers acting within the scope of their authority to record communications they could have recorded prior to the enactment of the statute. The exemption applies to the facts of this case. Under the plain language of the statute, the officers could not be found guilty of a crime and, thus, there can be no civil remedy against them.

Chapter 1.5 of the California Penal Code provides that certain acts of wiretapping and eavesdropping on or recording of confidential communications are criminal violations punishable by imprisonment not exceeding one year, or a fine not exceeding two thousand five hundred dollars ($2,500), or both. Section 637.2 of the chapter provides:

(a) Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts:

(1) Five thousand dollars ($5,000).

(2) Three times the amount of actual damages, if any, sustained by the plaintiff.

(b) Any person may, in accordance with the provisions of Chapter 3 (commencing with Section 525) of Title 7 of Part 2 of the Code of Civil Procedure, bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a).

(c) It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages.

Cal.Penal Code § 637.2 (Supp.1994).

Thus, a person who violates the provisions of Chapter 1.5 is subject to both civil and criminal liability. In interpreting the meaning of the provisions of the chapter, we must keep in mind that we are interpreting a criminal statute that provides for criminal punishment for the offender and *in addition* provides a civil remedy to the victim. Such a statute cannot have one meaning for criminal enforcement and another for civil liability. The same conduct is prohibited for both purposes.

Rattray's claim is based on a violation of section 632 of Chapter 1.5, which criminalizes the unconsented recording of confidential communications. However, section 633 of that chapter provides in pertinent part:

Nothing in Section ... 632 ... prohibits ... any chief of police, assistant chief of police, or policeman of a city ..., or any person acting pursuant to the direction of one of these law enforcement officers acting within the scope of his or her authority, from overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter.

Cal.Penal Code § 633 (Supp.1994).

It is clear that the police could lawfully overhear or record a communication, such as the one here in issue, prior to the effective date of the chapter. This case involves the recording of a conversation between two persons by one of them without the consent of the other. The district court specifically asked the plaintiff to provide any authority that such activity was unlawful prior to the effective date of the chapter. The plaintiff was unable to do so and this resulted in the district court dismissing this claim. On appeal, the plaintiff now cites the former California Penal Code § 653(h) as authority, which the majority seizes upon to justify its holding. Section 653(h) had nothing to do with the legality of one person secretly recording the conversation with another without the consent of the other person, which is the situation in this case. That section had to do with placing a recording device in a room without the consent of the occupant.

Two observations are important. First, that statute concerns the placing of a recording device in a room for general surveillance of the conversations of anyone in the room. Second, and more revealing, the recording device could be installed in a room with the consent of the occupant, and any conversations of others entering the room could obviously be overheard without their consent. This can hardly constitute authority for the proposition that before the enactment of the Privacy Act contained in Chapter 1.5, it was unlawful for the police or anyone else to record a face-to-face conversation with another without the other person's consent. It is the enactment of section 632 that made such activity unlawful. The exemption of section 633 for the police officers clearly applies if they were operating within the scope of their authority.

It scarcely can be doubted that the police officers involved in this case were operating within the scope of their authority when they were investigating the charge of sexual harassment. The majority transmutes the plain language of the statute, "acting within the scope of ... authority," to mean "acting in conducting a criminal investigation." I cannot imagine that these police officers could be convicted of a crime for recording this conversation on the basis of this transmuted language. The strict construction required of criminal statutes would unquestionably preclude it. If the conduct does not constitute a crime under the statute, there can be no victim of a crime and, therefore, no civil remedy.

I find the majority's constitutional argument to be unprecedented and unsound. The logic, as I understand it, is that even though the 1967 enactment of sections 632 and 633 may not have made this police recording a crime (with an additional civil remedy), the 1972 privacy amendment to the California Constitution did so, on equal protection grounds. Let us follow the logic through. A statute makes it a crime for a private citizen to record the conversation with another person without the other person's consent, but it does not apply to police officers operating within the scope of their authority, if they could lawfully record it prior to the Act. Under the majority view, the 1972 constitutional amendment operates so as to require a new interpretation of the 1967 criminal statute to include conduct that was specifically exempted in that statute. The theory is that after the 1972 constitutional amendment it would violate equal protection requirements not to extend criminal liability to those exempted by the 1967 statute.

I know of no authority that allows a criminal statute that covers conduct of certain persons to be interpreted to extend to others it does not cover, on grounds that not to do so violates constitutional equal protection provisions. Certainly, the California case of *Long Beach City Employees Ass'n v. City of Long Beach*, 41 Cal.3d 937, 227 Cal.Rptr. 90,

719 P.2d 660 (1986), relied upon by the majority, does not do so. *Long Beach Employees* simply held that a legislative scheme that outlawed involuntary polygraph tests for some private and public employees but permitted them for other public employees denied those other public employees equal protection of the law. The court, therefore, enjoined a public agency from requiring polygraph tests of its employees. Criminal or civil liability was not imposed on anyone by that decision. Here, the majority reinterprets the plain language of a criminal statute to impose criminal and civil liability on police officers on the grounds that failure to do so would violate the equal protection clause of the California Constitution. I find no justification for such an approach.

The legislature easily could have limited the section 633 exemption to "criminal investigations." It did not do so. If for policy reasons this is desirable, it is up to the state legislature to make the change. It is not for a federal court, in the guise of statutory or state constitutional interpretation, to restrict the exemption in contravention of the plain language of the statute.

## II.

### *STANDARD OF PROOF OF FALSITY*

The majority announces that the plaintiff need only prove the falsity of the statements by a preponderance of the evidence, but that clear and convincing evidence is required to prove malice. In my opinion, Judge Brewster was correct in concluding that clear and convincing evidence is required for a jury to find that the statements are actually false, as well as for a jury to find actual malice. To find actual malice requires clear and convincing evidence that the defendant knew that his statement was false or that it was made with reckless disregard of whether it was false. Implicit in this finding is the requirement that the statement is, in fact, false. A defendant cannot be held liable for defamation for making a true statement. Yet, under the bifurcated standard announced by the majority, a defendant could be held liable for knowingly making a false statement that a jury under the same clear and convincing standard of proof would not have found to be false. These two elements of the cause of action are necessarily closely interwoven; it is illogical to separate them. I agree with the statement of Judge Griffin Bell in his concurring opinion in *Firestone v. Time, Inc.*, 460 F.2d 712, 722–23 (5th Cir.), *cert. denied,* 409 U.S. 875, 93 S.Ct. 120, 34 L.Ed.2d 127 (1972):

> The Supreme Court has not expressly added the requirement of clear and convincing proof of falsity to the plaintiff's burden of proof. As stated, the burden of showing falsity has been imposed upon the plaintiff in First Amendment cases. *Garrison [v. Louisiana* ] supra [379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) ]; *Rosenblatt [v. Baer* ] supra [383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966) ]. Such a standard of proof seems implicit however, in the stated requirement in *New York Times* that plaintiff has the burden of showing by clear and convincing proof that publication was with knowledge of falsity or with reckless disregard as to falsity *vel non.* I conclude for the same constitutional reasons giving rise to this stringent proof requirement that the clear and convincing proof standard would also apply to proving that the statement was false in the first instance.

In *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), Justice Brennan noted the difficulties a defendant would have if truth were only a defense, with the burden of proof being placed on the defendant, and he stated the reason for special constitutional safeguards:

> A rule compelling the critic of official conduct to guarantee the truth of all his factual assertions—and to do so on pain of libel judgments virtually unlimited in amount—leads to a comparable "self-censorship." Allowance of the defense of truth, with the burden of proving it on the defendant, does not mean that only false speech will be deterred. Even courts accepting this defense as an adequate safeguard have recognized the difficulties of adducing legal proofs that the alleged libel was true in all its factual particulars. Under such a rule, would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt

whether it can be proved in court or fear of the expense of having to do so. They tend to make only statements which "steer far wider of the unlawful zone." The rule thus dampens the vigor and limits the variety of public debate. It is inconsistent with the First and Fourteenth Amendments.

*Id.* at 279, 84 S.Ct. at 725–26 (citations and footnote omitted).

It is apparent Justice Brennan was concerned with the difficulty the *defendant* would have in establishing the truth of a statement and the chilling effect this would have on free speech. The majority misapplies this statement to justify easing the burden on the *plaintiff* in proving the falsity of a statement. (Majority op. at 801.) Justice Brennan's words do not justify making it easier to prove the falsity of a statement than to prove the defendant's knowing it was false. It would have an equally chilling effect on free speech if the plaintiff were not required to prove the falsity of a statement with the same convincing clarity as the knowledge it was false.

Because I agree with the district court's rulings on these two issues I have discussed, I would affirm the judgment in its entirety.