Filed 3/13/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM TELISH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA STATE PERSONNEL BOARD, et al.,<br><br>    Defendants and Respondents;<br><br>CALIFORNIA DEPARTMENT OF JUSTICE, et al.,<br><br>    Real Parties in Interest and Respondents. | B250856<br><br>(Los Angeles County<br>Super. Ct. No. BS139506)<br><br><br>ORDER MODIFYING OPINION [CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on March 10, 2015, be modified in the following manner:

On page 20, line 2, replace the words "The Board" with the word "DOJ," so that the sentence reads:  DOJ shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM TELISH, | B250856 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS139506) |
| v. | |
| CALIFORNIA STATE PERSONNEL BOARD, et al., | |
| Defendants and Respondents; | |
| CALIFORNIA DEPARTMENT OF JUSTICE, et al., | |
| Real Parties in Interest and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

DesJardins & Panitz, LLP and Eric A. Panitz for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Assistant Attorney General, Christine B. Mersten and Chris A. Knudsen, Deputy Attorneys General for Real Parties in Interest and Respondents.

_____

Plaintiff and appellant William Telish (Telish) appeals a judgment denying his petition for writ of administrative mandate (Code Civ. Proc., § 1094.5)[1] wherein he sought to set aside a decision by defendant and respondent California State Personnel Board (SPB or Board) upholding his dismissal from his position with the California Department of Justice (DOJ).

The essential issue presented is the admissibility of recorded telephone conversations between Telish and his former girlfriend, L.D., which evidence was received at the administrative hearing in this matter.

A participant may properly record a telephone conversation at the direction of a law enforcement officer, acting within the course of his or her authority, in the course of a criminal investigation. (Pen. Code, § 633.)[2] Further, section 633 does not limit the use of duly recorded communications to criminal proceedings.

Although Telish contends the criminal investigation was a "sham," the Board determined L.D. duly recorded the telephone conversations pursuant to the direction of DOJ in connection with a criminal investigation, and the Board's finding is supported by substantial evidence. Therefore, the recorded telephone conversations were admissible at the administrative hearing. We also reject Telish's other arguments and affirm the judgment.

---

[1] The judgment denying the petition for writ of mandate is appealable. (Code Civ. Proc., §§ 904.1, subd. (a)(1), 1110; *Catalina Investments, Inc. v. Jones* (2002) 98 Cal.App.4th 1, 5, fn. 3; *International Film Investors v. Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 703.)

[2] All further statutory references are to the Penal Code, unless otherwise specified.

2

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In June of 2006, while working as Senior Special Agent in Charge at the Bureau of Narcotics Enforcement's (BNE) LA Interagency Metropolitan Police Apprehension Crime Task Force (LA IMPACT), Telish began a consensual sexual relationship with a subordinate employee, L.D., who worked as an administrative assistant and financial analyst. Their relationship continued on and off until the end of 2009. L.D. was one of approximately 100 employees supervised by Telish. He supervised L.D. from 2005 until 2008. On March 20, 2008, L.D. left LA IMPACT and accepted a position with the Placentia Police Department.

In October of 2007, rumors of Telish's relationship with L.D. surfaced at work. Jerry Hunter (Hunter), Assistant Chief at BNE, inquired about the rumors. Telish denied the relationship and admitted only to having gone to dinner with L.D. By the end of the conversation, Hunter believed Telish's account of his platonic work relationship with L.D. Telish then confronted L.D. about the rumors, upon which she explained that she had revealed their relationship to several co-workers. Telish was upset and instructed L.D. to deny their relationship and tell the co-workers that she had exaggerated it. Telish also directed L.D. to tell Douglas Law, Deputy Director of LA IMPACT, that she had made up or embellished their relationship. Telish had taken over 100 sexually explicit photographs of L.D. and he threatened to post them online or email them to her son if she did not recant her statements about being in a relationship with him.

---

[3]  The Board acts as an adjudicatory body, weighing the evidence to determine the facts (*Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, 1403-1404), and as an agency of constitutional authority, the Board's decisions "are reviewed only to determine whether substantial evidence supports the determination, even when vested rights are involved. [Citations.]" (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125.) Any factual finding by the Board "which is not specifically attacked is to be accepted as true." (*Black v. State Personnel Board* (1955) 136 Cal.App.2d 904, 909.) The bulk of the findings here are not attacked. Accordingly, this summary is based in large part on the SPB's decision, adopted on June 21, 2012, and included in the record on appeal, as part of the administrative record. (*State Trial Attorneys' Assn. v. State of California* (1976) 63 Cal.App.3d 298, 302, fn. 4.)

On October 27, 2009, while at L.D.'s home, Telish inquired about a risque text he saw on L.D.'s cell phone. He kept looking through the phone after being asked to stop and he accused L.D. of sleeping with other men. A struggle for the phone ensued. Telish held L.D.'s arm down to keep her from reaching the phone.

On December 9, 2009, L.D. reported to her current boss, Placentia Chief of Police James Anderson (Chief Anderson), that she had been assaulted by Telish and that in 2007 he threatened to release nude photographs of her if she failed to recant statements she had made about their affair. Believing that Telish had committed assault and battery as well as extortion, Chief Anderson reported L.D.'s allegations to DOJ Deputy Director Rick Lopes and to the Orange County District Attorney.

In January 2010, DOJ began a criminal investigation regarding L.D.'s allegations against Telish. As part of the investigation, at the direction of DOJ, L.D. surreptitiously recorded multiple telephone conversations she had with Telish. After being provided with a report from DOJ, the Orange County District Attorney's office declined to prosecute.

DOJ dismissed Telish from his position as a Senior Special Agent in Charge, effective July 19, 2010, alleging he intimidated, threatened to release sexually explicit photographs of, and physically assaulted a subordinate employee with whom he had a consensual relationship. DOJ also alleged Telish misused his State-issued vehicle, made derogatory racial comments about a supervisor, discussed the physical attributes of candidates for a position on a task force, falsely claimed to have an informant who provided him with confidential information, was dishonest during an investigatory interview, and destroyed evidence.

1. *Administrative proceedings*.

a. *The proposed decision of the administrative law judge (ALJ) denying Telish's motion to exclude evidence of the recordings and sustaining his dismissal*.

Telish appealed his dismissal to the SPB. The hearing was conducted on February 28, and March 1 - 4, 2011. At the commencement of the hearing, Telish moved to exclude evidence of the surreptitious recordings between him and L.D. contending that,

4

among other legal theories, the recordings were made in violation of section 632. He argued the recordings were made without his consent, were not recorded as part of a pending criminal investigation with probable cause, were not recorded with the supervision of a law enforcement agency, and were inadmissible during an administrative hearing.

On March 17, 2011, the ALJ issued an order, separate from her proposed decision, denying Telish's motion to exclude evidence of the recordings. The ALJ ruled that because the recordings were performed at the direction of the DOJ and related to a criminal investigation of serious crimes, they were admissible pursuant to section 633.

With respect to the merits, the ALJ found Telish's behavior constituted cause for discipline under various subdivisions of Government Code section 19572 and that the appropriate penalty was dismissal.

b. *The Board's decision, ruling the recordings were inadmissible but the remaining evidence was sufficient to uphold the dismissal*.

The Board rejected the ALJ's proposed decision and decided to hear the case itself. The parties appeared and presented oral arguments to the Board on December 13, 2011.

The Board adopted all of the ALJ's findings of fact. However, it reversed the ALJ's evidentiary ruling and held the evidence obtained from the surreptitious recordings was inadmissible. Citing *Rattray v. City of National City* (9th Cir. 1994) 51 F.3d 793 (*Rattray*), discussed *infra*, the Board held that although the recordings properly were made by L.D. acting pursuant to the direction of law enforcement in connection with a criminal investigation (§ 633), the recordings could only be utilized in a criminal proceeding, and therefore should have been excluded by the ALJ at the administrative hearing.

The Board concluded that although the recordings should have been excluded, their admission by the ALJ was harmless error and therefore Telish's dismissal remained intact. "Independent of the recordings, sufficient evidence exists in support of each cause of action for discipline found by the ALJ. . . . Notwithstanding the recordings, each

5

factual basis in support of each sustained charge is corroborated by live testimony and/or other evidence admitted at [the] hearing."

2. *Superior court proceedings*.

Telish filed a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5), seeking to set aside the Board's decision upholding his dismissal. Telish contended the recorded phone conversations were inadmissible, and absent the recordings and their progeny, there was insufficient evidence to sustain the dismissal.

DOJ filed a cross-petition for writ of administrative mandate. DOJ's petition sought to overturn the Board's decision insofar as it excluded evidence of the recordings. DOJ requested that in all other respects the Board's decision be upheld.

After considering the papers and hearing argument, the trial court concluded the Board erroneously excluded the recorded phone calls because they were duly recorded by L.D., at the direction of the DOJ, as part of a criminal investigation. (§ 633.) Further, "[t]here is nothing in section 633 which limits use of the telephone call recorded pursuant to the law enforcement exception in a criminal case. Rather, if the conversation is recorded in the course of a criminal investigation, the exception applies and the recording is admissible in any proceeding -- criminal, civil, or administrative." The trial court further ruled that even assuming the recordings were inadmissible, there was sufficient remaining evidence to uphold the dismissal and that the penalty of dismissal was not an abuse of discretion.

The trial court entered judgment denying Telish's petition and granting DOJ's cross-petition. It directed the Board to set aside the portion of its decision that held the recorded phone conversations were inadmissible.

Telish appealed.

## CONTENTIONS

We summarize Telish's contentions as follows: (1) the recordings and their progeny were inadmissible because they were obtained in a sham criminal investigation for use in administrative proceedings against him; (2) the DOJ violated his rights under the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et

6

seq.); (3) the recordings were inadmissible in any proceeding because they were confidential communications obtained in violation of section 632; (4) L.D.'s credibility as a victim should be reevaluated; (5) if the recordings and their progeny are disregarded, the adverse decision cannot be upheld.[4]

## DISCUSSION

### 1. *Standards applicable to judicial review of an SPB decision.*

Trial court review of an administrative decision is governed by Code of Civil Procedure section 1094.5. Subdivision (b) thereof limits the court's inquiry "to the questions whether the [administrative tribunal] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." In determining whether there was an abuse of discretion, the reviewing court considers whether the administrative tribunal proceeded in the manner required by law, whether its order or decision is supported by the findings, and whether the findings are supported by the evidence. (*Ibid.*)

Because the SPB is vested with quasi-judicial powers, the trial court may not exercise its independent judgment, but must uphold the Board's findings if they are supported by substantial evidence. In applying the substantial evidence test, the trial court must examine all relevant evidence in the entire record, considering both the evidence that supports the Board's decision and the evidence against it, in order to determine whether that decision is supported by substantial evidence. (*Coleman v. Department of Personnel Administration*, *supra*, 52 Cal.3d at p. 1125; *Furtado v. State Personnel Bd.* (2013) 212 Cal.App.4th 729, 742 (*Furtado*). This does not mean,

---

[4] Telish's reply brief on appeal belatedly raises various new arguments. In the reply brief, Telish contends, inter alia, the recordings of his private conversations denied him equal protection, and that the penalty of dismissal was an abuse of discretion. An appellant's failure to raise an argument in the opening brief waives the issue on appeal. (*Tisher v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361; *Dieckmeyer v. Redevelopment Agency of Huntington Beach* (2005) 127 Cal.App.4th 248, 260.) Therefore, points which Telish raises for the first time in his reply brief have been waived.

however, that a court is to reweigh the evidence; rather, all presumptions are indulged and conflicts resolved in favor of the Board's decision. (*Furtado*, at p. 742.)

These standards "do not change on appellate review from a trial court's denial of a petition for writ of mandate from a decision of the SPB; an appellate court independently determines whether substantial evidence supports *the SPB's findings*, not the trial court's conclusions." (*Furtado*, *supra*, 212 Cal.App.4th at p. 742.) However, insofar as an appeal from an administrative mandamus proceeding presents questions of law, our review is de novo. (*Ibid*.)

2. *Trial court properly held the recorded phone calls were admissible because L.D. recorded them at the direction of law enforcement.*

a. *Statutory scheme.*

The Invasion of Privacy Act (§ 630 et seq.) prohibits one party to a conversation from recording it without the other's consent. (*Ribas v. Clark* (1985) 38 Cal.3d 355, 360.) While one "who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device. [Citation.]" (*Id*. at pp. 360-361.)

Section 632 states in relevant part: "(a) Every person who, intentionally and *without the consent of all parties* to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or *records the confidential communication*, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment." (Italics added.)

The term "confidential communication" is defined as including "any communication carried on in circumstances as may reasonably indicate that any party to

8

the communication desires it to be confined to the parties thereto . . . ." (§ 632, subd. (c).)

Subdivision (d) of section 632 provides for the exclusion of evidence obtained in violation of the statute. It states: "Except as proof in an action or prosecution for violation of this section, *no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section* shall be admissible in any judicial, administrative, legislative, or other proceeding." (Italics added.)

Section 633, which is the key provision for our purposes, creates an exception for recorded communications by an individual acting at the direction of law enforcement. "Nothing in Section 631, 632, 632.5, 632.6, or 632.7 prohibits the Attorney General, any district attorney, or any assistant, deputy, or investigator of the Attorney General or any district attorney, any officer of the California Highway Patrol, any chief of police, assistant chief of police, or police officer of a city or city and county, any sheriff, undersheriff, or deputy sheriff regularly employed and paid in that capacity by a county, police officer of the County of Los Angeles, *or any person acting pursuant to the direction of one of these law enforcement officers acting within the scope of his or her authority*, from overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter." (§ 633, italics added.)[5] [6]

---

[5] Said chapter, the Invasion of Privacy Act, was added by Statutes 1967, chapter 1509, section 1. Under prior law, recording of telephone conversations was "not illegal if consent of *one party* to the communication [was] obtained." (Sen. Com. on Judiciary, analysis of Assem. Bill No. No. 860 (1967-1968 Reg. Sess.) as amended June 5, 1967, p. 1, italics added.)

[6] Similarly, the federal Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., provides in relevant part at section 2511(2)(c): "It shall not be unlawful under this chapter *for a person acting under color of law* to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." (Italics added.) In "assessing whether someone acted under 'color of law' for the wiretap statute, the question is whether the witness was acting under the government's direction when making the recording." (*U.S. v. Andreas* (7th Cir. 2000) 216 F.3d 645, 660.)

b. *Duly recorded phone calls are admissible in administrative proceedings*.

As set forth above, notwithstanding section 632, an individual acting at the direction of a law enforcement officer may record a confidential communication. (§ 633.) That is what occurred here. As the Board found, L.D. surreptitiously recorded multiple telephone conversations between herself and Telish, under the direction of Special Agent Stauts (Stauts), who was conducting a criminal investigation of Telish on behalf of the DOJ.

The Board found the exception of section 633 "allowed [L.D.] to record her telephone conversations with [Telish] at the direction of the DOJ."

Although the Board found L.D. made the recordings at the direction of law enforcement, it ruled the recordings could not be admitted into evidence at the administrative hearing before the ALJ. Its rationale was that "section 633 is intended *solely* to permit law enforcement officers to continue to use electronic devices in criminal investigations, necessary in the performance of their duties in detecting crimes and apprehending criminals. . . . [I]n this case, even though the recording was performed pursuant to the direction of the DOJ in connection with a criminal investigation, the use of the recording was to discipline a DOJ employee in an administrative hearing, betraying the very purpose of the legislation, which is to detect crimes and apprehend criminals. Simply because DOJ obtained the recordings as part of a criminal investigation, does not mean that it has free rein to use the recordings at its own volition."

We, like the trial court, conclude the Board misread the statute. Section 632, subdivision (d) precludes the admission of evidence obtained "*in violation of this section*," i.e., section 632, "in any judicial, administrative, legislative, or other proceeding." (§ 632, subd. (d), italics added.) Thus, the subdivision only excludes evidence which was obtained in violation of section 632. Evidence which was obtained without violating section 632 is not made inadmissible by subdivision (d) thereof. Further, nothing in section 632, subdivision (d) limits the use of duly recorded communications to criminal proceedings or precludes their use in administrative

10

proceedings.  If evidence is obtained without running afoul of section 632, nothing in subdivision (d) limits the manner in which such evidence may be used.[7] [8]

The maxim *expressio unius est exclusio alterius*, which means " 'the expression of certain things in a statute necessarily involves exclusion of other things not expressed' " (*Dyna–Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13), is applicable here.  The exclusionary rule set forth in subdivision (d) of section 632 provides for the exclusion only of evidence obtained "*in violation of this section . . .* in any judicial, administrative, legislative, or other proceeding." (*Ibid.*, italics added.)  Thus, the exclusionary rule is not as broad as Telish would like.  It does not restrict the use of evidence which was properly obtained in accordance with section 633.  The Legislature certainly could have specified that evidence lawfully obtained pursuant to section 633, at the direction of law enforcement, may only be used in a criminal proceeding.  It did not do so.  This court cannot, under the guise of interpretation (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342,

---

[7]     Federal law is in accord.  In *Resha v. U.S.* (6th Cir. 1985) 767 F.2d 285 (cert. den.), the issue presented was whether evidence derived from a lawful wiretap during an investigation of criminal activities and later disclosed to revenue agents who used it for the purpose of making civil tax assessments was subject to suppression in an action to recover taxes paid pursuant to such assessments.  *Resha* "construe[d] [18 U.S.C.] § 2515 to permit suppression of evidence only if that evidence was derived from unlawful, improper or unauthorized interceptions of wire or oral communications." (767 F.2d at p. 288, italics omitted.)  *Resha* concluded "the legislative history and authoritative construction of the statute lead to the conclusion that the extreme remedy of suppression is authorized only when the interception itself was unlawful for one or more of the reasons set forth in [18 U.S.C.] § 2518(10)(a)." (767 F.2d at p. 289.)

[8]     The trial court reached the identical conclusion.  It reasoned:  "There is nothing in section 633 which limits use of the telephone call recorded pursuant to the law enforcement exception in a criminal case.  Rather, if the conversation is recorded in the course of a criminal investigation, the exception applies and the recording is admissible in any proceeding -- criminal, civil, or administrative.  Indeed, section [632(d)] only excludes evidence obtained in violation of section [632]; evidence obtained pursuant to section 633's law enforcement exception is not evidence obtained in violation of section [632's] proscription."

11

349), expand the exclusionary rule of section 632, subdivision (d), or insert a limitation in section 633, by adding terms which the Legislature chose not to include. "[W]e must limit ourselves to interpreting the law as written and leave for the People and the Legislature the task of revising it as they deem wise." (*People v. Garcia* (1999) 21 Cal.4th 1, 15.) "A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed. [Citations.]" (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73-74.)

### c. *Telish's authorities are inapposite.*

Telish's, and the Board's, reliance on *Rattray*, *supra*, 51 F.3d 793 to disallow the recordings is misplaced. There, Officer Rattray was accused of sexually harassing a female coworker, Figueroa. In the course of investigating this complaint, the police captain directed "that Figueroa attempt to engage Rattray in a flirtatious conversation, and that she secretly record the incident. Figueroa subsequently taped a conversation between herself and Rattray." (*Id*. at pp. 795-796.) Rattray sued, alleging inter alia, a claim of invasion of privacy based on the secret recording of his conversation with Figueroa. (*Id*. at p. 796.)

The district court relied upon the section 633 exception to dismiss plaintiff's claim, "ruling that because police captains could secretly record the private conversations of their employees by 'wiring' one party to the conversation prior to the enactment of § 633, the actions of Rattray's supervisors did not run afoul of § 632 in this case." (*Rattray, supra*, 51 F.3d at p. 797, fn. omitted.) The Ninth Circuit reversed, stating "[t]he legislative history of § 633 and the dictates of the California Constitution, however, compel a conclusion that *§ 633 protects only electronic recording and eavesdropping in the course of criminal investigations*, and not police recordings of their own employees as a matter of internal discipline." (*Rattray*, *supra*, at p. 797, italics added.)

Thus, in *Rattray*, the section 633 exception did not apply because the recording was not obtained in the course of a criminal investigation. Rather, there was merely an internal investigation into Figueroa's accusation that co-worker Rattray had sexually harassed her.

12

Here, unlike *Rattray*, the recordings occurred in the context of a criminal investigation, so as to bring this fact situation within the section 633 exception for a recording made at the direction of law enforcement. *Rattray* stands for the proposition that section 633 only protects recordings which were made in the course of a criminal investigation. As the trial court observed herein, "*Rattray* has nothing to do with the use of a recorded telephone call, *properly recorded in a criminal investigation*, in a civil or administrative case." (Emphasis added.)

Telish also relies heavily on *Dyson v. State Personnel Bd*. (1989) 213 Cal.App.3d 711 (*Dyson*). There, the Department of Youth Authority conducted a search of a youth counselor's home for evidence that the counselor had committed the crime of theft. (*Id*. at p. 714.) A criminal prosecution was dismissed on the ground the search violated the employee's constitutional right to privacy. (*Ibid*.) However, over the employee's objection, the unconstitutionally seized evidence was admitted in a subsequent administrative disciplinary proceeding which resulted in the employee's dismissal. (*Id*. at pp. 714-715.) The issue presented on appeal was whether said evidence should have been excluded from the administrative proceedings. *Dyson* concluded the Board was collaterally estopped to deny the constitutional invalidity of the search, as determined in the criminal proceeding, and the unconstitutionally seized evidence should have been excluded in the administrative proceeding. (*Id*. at p. 715.)

*Dyson* does not assist Telish. Unlike *Dyson*, where the evidence was seized unlawfully, L.D. duly recorded her conversations with Telish pursuant to the direction of law enforcement, in connection with an active criminal investigation. (§ 633.) Therefore, *Dyson*'s exclusionary rule has no application here. (See *California Science Center v. State Personnel Bd.* (2013) 218 Cal.App.4th 1302, 1308-1309 [distinguishing *Dyson*; exclusionary rule did not apply because evidence leading to employee's termination was not obtained via an unconstitutional search or seizure].)

Likewise, *In re M.B.* (State Personnel Bd. 1996) SPB Precedential Decision No. 96-08, cited by Telish, is inapposite. There, evidence was excluded in an administrative proceeding because it was obtained in violation of the federal wiretapping

13

law. (18 U.S.C. §§ 2510-2521). Here, the recordings were obtained lawfully (§ 633) and therefore were admissible in the administrative proceeding.

d. *No merit to Telish's contention the criminal investigation was a sham; the Board properly determined L.D. duly recorded the conversations at the direction of law enforcement.*

In an attempt to avoid section 633's allowance of recordings at the direction of law enforcement, Telish contends the criminal investigation was a "sham" to enable DOJ to invoke section 633, which authorizes recording of conversations at the direction of law enforcement.

Whether a criminal investigation is a sham is a factual issue. (*Van Winkle v. County of Ventura* (2007) 158 Cal.App.4th 492, 498 (*Van Winkle*) [former deputy sheriff contended sheriff's departments often initiate criminal investigations as shams to conduct disciplinary investigations without affording POBRA protections].) Here, the Board found L.D. duly recorded the telephone conversations in accordance with section 633 "pursuant to the direction of the DOJ in connection with a criminal investigation." That finding, which is supported by substantial evidence, must be upheld. The evidence showed:

In 2009, L.D. was working for the City of Placentia as the administrative assistant to its police chief, Chief Anderson. In late 2009, L.D. told Chief Anderson that (1) Telish had assaulted her in her home by holding her down on a couch while he examined her cell phone history, and (2) Telish had threatened to show L.D.'s son nude photographs of her if she failed to recant statements she had made about their affair.

Based on L.D.'s report, Chief Anderson felt that Telish had potentially committed crimes of domestic violence and extortion. Chief Anderson was extremely upset and felt that Telish should not be in law enforcement. Chief Anderson reported L.D.'s statements to Director George Anderson and Deputy Director Rick Lopes of DOJ's Division of Law Enforcement which oversees the Bureau of Narcotics Enforcement, which is where Telish worked.

14

DOJ commenced a preliminary investigation by having L.D. interviewed by two investigators from its Professional Standards Group. L.D. told them that she was involved in a sexual relationship with Telish, he had physically assaulted her, and he had threatened to release nude photographs of her if she did not cooperate in concealing their affair. The interviewers found L.D. spoke candidly and was credible.

Based on the report from the interviewers, Director Anderson opined "it appeared that we had criminal violations in the area with domestic violence, dissuading a witness, perhaps perjury. . . . [¶] So at that point on, we had to investigate it criminally."

The criminal investigation was *first* in time, and was separate from the administrative investigation, which was conducted by DOJ's employment law office, outside the Division of Law Enforcement.

Director Anderson met with a criminal supervising deputy attorney general, Canzoneri, to obtain an independent evaluation of possible criminal charges and to discuss how to proceed. It was determined the potential charges against Telish consisted of witness intimidation and false imprisonment.

Director Anderson decided "we needed to go ahead and make surreptitious telephone recording conversations so we could establish whether in fact there was criminal culpability." Director Anderson gave the approval to proceed with the telephone recordings.

The criminal investigation was conducted by Special Agent Stauts. He advised L.D. that it was legal for her to surreptitiously record the conversations as an agent of a peace officer. Stauts instructed L.D. to record her telephone conversations with Telish, and to discuss that he had held her down on the couch and had threatened to expose her nude photographs if she did not cooperate in concealing their relationship. L.D. expressed concern that this discussion would cause Telish to know that she was recording the conversations, but Stauts assured her that based on his experience, Telish would not react that way. After each telephone call, L.D. contacted Stauts and gave him a synopsis. Stauts then would meet with L.D., obtain the recorder, and download the recording to his computer. L.D. recorded eight telephone conversations with Telish.

15

In the final taped conversation on February 23, 2010, Telish acknowledged he had held L.D. down on the couch while he looked through her phone. That was sufficient because Canzoneri had advised Stauts that false imprisonment was the stronger of the two charges. Stauts then prepared a report on the criminal investigation and submitted it to the Orange County District Attorney's office, which declined to prosecute.

In sum, substantial evidence supports the Board's conclusion that section 633 applied insofar as "[L.D.] . . . record[ed] her telephone conversations with [Telish] at the direction of the DOJ." The evidence showed the DOJ criminal investigation was prompted by a report from Chief Anderson, at an outside law enforcement agency, that Telish had engaged in domestic violence against L.D. and had threatened her if she refused to recant the affair. It was Chief Anderson who contacted DOJ because he believed Telish "had committed a crime against her." Stauts directed L.D. to record the conversations because he "didn't think there was any other way we were going to prove or disprove her allegations." The record supports the Board's determination that L.D. duly recorded the conversations, at DOJ's direction, in its criminal investigation of Telish. Accordingly, we reject Telish's contention the criminal investigation was a sham to circumvent section 633.

3. *Telish's POBRA arguments*.

a. *The protections of POBRA do not apply to an officer subject to an independent criminal investigation conducted by his or her employer.*

POBRA (Gov. Code, § 3300 et seq.) provides procedural rights for a law enforcement officer who is the subject of an administrative investigation. Government Code section 3303 specifies the protections that apply when a peace officer is interrogated in the course of an administrative investigation that might subject the officer to punitive action, such as " 'dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment.' " (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 574.) Telish contends POBRA's protections were applicable because he was under an "administrative investigation" while he engaged in private telephone conversations with L.D. The argument fails.

16

Government Code section 3303, subdivision (i), states in relevant part, "This section shall not apply to any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer, *nor shall this section apply to an investigation concerned solely and directly with alleged criminal activities*." (Italics added.) Thus, the protections of POBRA do not apply to an officer who is subject to an independent criminal investigation conducted by the employer (*Van Winkle*, *supra*, 158 Cal.App.4th at pp. 494, 498), which is what occurred here.[9]

### b. *Statute of limitations.*

Telish also contends this matter is time-barred because, pursuant to POBRA, the DOJ had one year from the time of an earlier investigative report, dated March 28, 2008, to proceed against him.[10]

"The date upon which an administrative agency discovers misconduct is a question of fact, as is the reasonable diligence with which the person authorized to initiate an investigation into misconduct acted." (*Haney v. City of Los Angeles* (2003) 109 Cal.App.4th 1, 8.)

On June 29, 2010, Telish was served with a Notice of Adverse Action (NOAA) of Dismissal. The NOAA alleged that in 2007 it was reported to management that he and

---

[9]     Telish relies on language in *California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294 "that the criminal investigations referred to in subdivision (i) of section 3303 . . . must be ones conducted primarily by outside agencies without significant active involvement or assistance by the employer." (82 Cal.App.4th at pp. 308-309.) However, *Van Winkle* noted "there is no language in [POBRA] which supports this interpretation." (*Van Winkle*, *supra*, 158 Cal.App.4th at p. 499; accord *Department of Corrections & Rehabilitation v. State Personnel Bd.* (2013) 215 Cal.App.4th 1101, 1109.)

[10]     Government Code section 3304 states in relevant part at subdivision (d), "no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation *is not completed within one year of the public agency's discovery* by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct."

L.D. were having an affair, and that he coerced L.D. to recant her statement that they were having an affair. "However, *it was not until December 2009* that DOJ learned that the reason [L.D.] recanted the story of the affair . . . in 2007 was that you threatened to release the nude pictures that you had of her to her son and others, if she did not do so. In other words, you coerced her to lie." (Italics added.)

In ruling the action was timely, the Board determined, "There is no evidence that anyone meeting the definition of a 'person authorized to initiate an investigation' [(Gov. Code, § 3304, subd. (d)(1))] had knowledge of [Telish] allegedly threatening to release the photographs *until L.D. reported the threat in December 2009*. Accordingly, the charge is not barred by the [statute of limitations]." (Italics added.)

We perceive no error. We are mindful it was not until late 2009 that L.D. disclosed Telish's threats to Chief Anderson. Therefore, substantial evidence supports the Board's determination that the DOJ did not discover this misconduct until December 2009. We conclude Telish's contention the DOJ should have discovered the threats in 2007 or 2008 is meritless.

> 4. *Telish's contentions with respect to the merits of the Board's decision.*

> > a. *No merit to Telish's contention that L.D.'s credibility should be reevaluated and that her testimony should be given no weight.*

Telish contends L.D.'s credibility should be reevaluated and that her testimony should be given no weight. We summarily reject Telish's argument that the Board should have disbelieved L.D.'s testimony. "[C]redibility of witnesses and the proper weight to be given to their testimony were matters within the exclusive province of the [B]oard." (*Lorimore v. State Personnel Board* (1965) 232 Cal.App.2d 183, 189; accord *Wilson v. State Personnel Bd.* (1976) 58 Cal.App.3d 865, 877; *Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 759; *Larson v. State Personnel Bd.* (1994) 28 Cal.App.4th 265, 273.)

18

b. *No challenge to sufficiency of the evidence to support Board's decision*.

Apart from attacking L.D.'s credibility and contending the criminal investigation was a sham, Telish does not challenge the sufficiency of the evidence to support the Board's adverse decision on the various charges against him.

Further, Telish's opening brief, which sets forth the evidence in the light most favorable to him, cannot be construed as presenting such a contention. " 'When an appellant challenges an administrative decision as unsupported by substantial evidence in light of the record as a whole, it is [the] appellant's burden to demonstrate that the administrative record does not contain sufficient evidence to support the agency's decision.' [Citation.] A recitation of only the part of the evidence that supports the appellant's position 'is not the "demonstration" contemplated under the above rule. [Citation.] Accordingly, if [appellants] contend "some particular issue of fact is not sustained, they are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*. Unless this is done the error is deemed to be waived." ' [Citations.]" (*State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 749.)[11]

c. *Unncecessary to address whether the Board's decision can be sustained if the recordings and their progeny were disregarded*.

Finally, Telish contends that absent the recordings and their progeny, the Board's adverse decision cannot be upheld. In view of our conclusion that L.D. duly made the recordings at the direction of law enforcement in the course of a criminal investigation (§ 633), it is unnecessary to discuss whether the Board's decision would be sustainable if the challenged evidence were excluded.

---

[11] We note the trial court similarly found, "Telish's moving papers contain only snippets of the relevant facts. For each charge, the papers cite only to testimony and evidence which Telish contends supports his position without any reference to the other facts and evidence. [¶] . . . [¶] Telish's opening brief is procedurally defective because he did not present all of the pertinent evidence on any issue; the court cannot evaluate from the facts he presents whether substantial evidence exists to support the SPB's decision. Telish's petition is denied for this reason alone."

19

**DISPOSITION**

The judgment is affirmed.  The Board shall recover its costs on appeal.


**CERTIFIED FOR PUBLICATION**



                                    EDMON, P. J.

We concur:



KITCHING, J.



ALDRICH, J.

20