Filed 1/22/16  Rivera v. City of Ontario CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| WENDY RIVERA, | D068682 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVRS1306086) |
| CITY OF ONTARIO, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Bernardino County, Keith D. Davis, Judge.  Affirmed.

Law Office of Michael A. Morguess and Michael A. Morguess for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Laura J. Kalty, David A. Urban and Sharde C. Thomas for Defendant and Respondent.

I.

INTRODUCTION

Wendy Rivera appeals from the trial court's judgment denying her petition for writ of administrative mandate against respondent City of Ontario (the City). Rivera filed the petition seeking to set aside a hearing officer's decision upholding the City's termination of her employment with the City.[1] On appeal, Rivera's primary contention is that a provision in the memorandum of understanding (MOU) governing her employment required the City to impose "progressive discipline"[2] for her misconduct while working as a supervisor in a police dispatch center, and that the City failed to do so. Rivera also contends that the hearing officer's findings are insufficient to explain the basis of the hearing officer's decision upholding Rivera's termination. Finally, Rivera contends that the City's termination of her employment constituted an abuse of discretion. We affirm the judgment.

---

[1] Although Rivera named the hearing officer, Joseph F. Gentile, as a respondent to her petition, the trial court dismissed Gentile from the action on the ground that he was not a proper party to the proceeding. Rivera does not challenge this determination on appeal and Gentile has not appeared in this appeal. Thus, we conclude that Gentile is not a party to this appeal.

[2] Although the agreement does not provide a definition of progressive discipline, the parties appear to agree that the term refers to a system of employee discipline whereby an employer takes progressively more severe disciplinary measures in response to continued employee misconduct.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Factual background*

1.      *Rivera's misconduct*

Rivera engaged in three types of misconduct. We summarize each type below.

a.      *Rivera misuses the City's timekeeping system, resulting in her being overpaid on three occasions*

The City requires employees of the police department who work shifts in excess of five hours to take a 30-minute unpaid break. The City's computerized timekeeping system (Kronos), automatically deducts 30 minutes for employee shifts lasting longer than five hours. If an employee does not actually take a break while working, the employee is permitted to override the deduction. The effect of an override would be that the employee would receive overtime wages for the 30-minute period in which the employee would otherwise have taken a break. On three separate occasions in March 2010, Rivera accessed the system and overrode the automatic deduction, despite the fact that she took a 30-minute break on each of these occasions.

b.      *Rivera neglects her duties on numerous occasions*

As a supervisor working in the dispatch center, Rivera was required to supervise other dispatchers and also to work as a dispatcher in the center as needed. On eight separate occasions throughout March and April 2010, Rivera failed to perform her duties.

On March 17, Rivera ignored a request to fix a malfunctioning computer and, instead chatted with a dispatcher.

On March 22, Rivera spoke with an officer for over two hours, while leaving her phone in the "not ready" position, meaning that incoming calls would be routed to other dispatchers or placed in a queue.

On March 24, Rivera was "unplugged" from her dispatch console for approximately two hours while she spoke with a dispatcher.

On March 25, Rivera spoke with a dispatcher for over an hour and a half.

On March 30, Rivera spoke with an officer for approximately a half-hour during a period in which the dispatch center was receiving a high volume of calls due to a fire in the City of Chino. During the time that Rivera was chatting, calls went unanswered.

On April 12, Rivera left the dispatch center for breaks that lasted well in excess of her allotted break time.

On April 20 and 21, Rivera spent several hours away from her console talking to a dispatcher with whom she frequently chatted. During the time Rivera was talking with the dispatcher, Rivera did not answer any 911 calls and did not assist any of the other dispatchers who were attempting to handle a high volume of calls.

        c.     *Rivera improperly accesses a law enforcement database for personal reasons*

In February 2010, Rivera instructed a dispatcher to input the name of an individual into a law enforcement database called the Jail Information Management System Network (JIMSNET). JIMSNET contains information concerning the names of persons who are in custody. Rivera failed to disclose to the dispatcher that the individual whose name she provided was her brother and that the reason she had instructed the dispatcher

to input the name into JIMSNET was in order to find out whether her brother had been in custody.

2.      *The City's termination of Rivera's employment*

Between March 2010 and January 2011, the City conducted an internal investigation into Rivera's misconduct.  In February 2011, pursuant to the MOU, the City provided Rivera with a "Notice of Final Determination - Termination."  The notice outlined the misconduct summarized above and described the relevant duties, policies, and laws on which her termination was based.

B.      *Procedural background*

Pursuant to a provision in the MOU, Rivera appealed her termination to an administrative hearing officer.  The hearing officer held an evidentiary hearing over four days in February and June 2012.  The hearing officer issued a written decision upholding the termination in December 2012.  In his decision, the hearing officer found that Rivera had misused the City's timekeeping system, neglected her job duties, and improperly accessed the JIMSNET database.  The hearing officer also determined that the MOU did not mandate that the City impose progressive discipline for Rivera's misconduct and found that no mitigating circumstances warranted modification of the degree of discipline.  Accordingly, the hearing officer sustained the City's termination of Rivera's employment.

Rivera filed a petition for writ of administrative mandate in August 2013, challenging the hearing officer's decision.  After briefing, the trial court issued an oral tentative statement of decision denying the petition.  As described in detail in parts

5

III.A.1.b., and III.C., *post*, the trial court found that Rivera had misused the City's timekeeping system, "egregiously neglected" her job duties, and improperly accessed the JIMSNET enforcement database. The trial court also determined that the City was not required to impose progressive discipline and concluded that the City had not abused its discretion in terminating Rivera's employment. The trial court held a hearing at which it heard argument from both parties in June 2014. At the conclusion of the hearing, the court confirmed its tentative decision. The following month, the trial court entered a judgment denying the petition. Rivera timely appeals.

## III.

## DISCUSSION

A.    *The progressive discipline clause in the MOU did not preclude the City from terminating Rivera due to her serious misconduct*

Rivera contends that provisions in the MOU that mandate that the City impose progressive discipline for employee misconduct except in cases in which the employee's "conduct imperils the safety or welfare of the public, other employees, or said employee" precluded the City from terminating her employment. She offers two distinct arguments in support of this claim. We consider each argument below.

1.    *The trial court did not err in determining that Rivera's conduct imperiled the safety or welfare of the public and other employees such that the exceptions to progressive discipline contained in sections 7.02 and 7.03 of the MOU applied*

Rivera contends that the trial court erred in determining that her conduct imperiled the safety or welfare of the public and other employees such that the exceptions to

6

progressive discipline contained in sections 7.02 and 7.03 of the MOU[3] applied. Rivera

offers two arguments in support of this claim. First, Rivera contends that principles of

contractual interpretation demonstrate that the exceptions to progressive discipline

contained in sections 7.02 and 7.03 are to be interpreted narrowly. In addition, Rivera

contends that her conduct did not "rise to [the] level" of imperiling the safety or welfare

of the public and other employees, and that the City was therefore not free to dispense

with the mandate that it employ progressive discipline in addressing employee

misconduct.

a.     *Rivera's contractual interpretation arguments*

We consider Rivera's contractual interpretation arguments first, applying the de

novo standard of review because none of Rivera's contentions turns on the credibility of

extrinsic evidence. (See *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107

Cal.App.4th 516, 520 [the " 'interpretation of a contract is subject to de novo review

where the interpretation does not turn on the credibility of extrinsic evidence' "]; *Telish v.*

*State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487 (*Telish*) ["insofar as an appeal

from an administrative mandamus proceeding presents questions of law, our review is de

novo"].)

Rivera claims that the structure of the relevant MOU provisions supports a narrow

interpretation of sections 7.02 and 7.03. She notes that section 7.01 outlines the

procedures that the City is to apply in disciplining employees who are governed by the

---

3     All subsequent references to sections 7.01, 7.02, or 7.03 are references to sections
7.01, 7.02 and 7.03 of the MOU.

agreement.  Section 7.01 mandates that the City provide certain pre-deprivation due process procedures prior to imposing discipline, including 10 days advance notice of a proposed disciplinary action, a notice containing the facts and grounds for the proposed discipline, the materials or documents on which discipline is based, and an opportunity to respond to the proposed action.  Section 7.02 in turn provides:

> "**Exceptions**
>
> "The above procedure may be deviated from in circumstances where there is a need for immediate action.  In such cases, an employee may be ordered off the job if his/her conduct imperils the safety or welfare of the public, other employees, or said employee (i.e. drunkenness, violence, gross insubordination)."

Section 7.03 provides:

> "**Progressive Discipline**
>
> "The City shall use the principles of progressive discipline, except in cases that are referred to in Section 7.02 of this Article."

Rivera notes that in disciplining her, the City did not deviate from the procedures specified in section 7.01, but rather, provided her with the full panoply of pre-deprivation and post-deprivation procedures to contest her termination.  She argues that the fact that the City determined that her misconduct did not warrant denying her pre-deprivation due process procedures under 7.01 supports the conclusion that the misconduct at issue was not of the type that would permit the City to refuse to apply principles of progressive discipline under section 7.03.  We are not persuaded.  For the reasons we discuss below in connection with Rivera's contention that her misconduct did not imperil the safety or welfare of the public or other employees, we conclude that the City *could* have taken

immediate action against Rivera in view of the misconduct alleged (i.e. denied her the right to the pre-deprivation procedures outlined in section 7.01). Further, to the extent that Rivera intends to argue that the City may not invoke the exception to progressive discipline in section 7.03 unless it *actually* deprives the employee of pre-deprivation procedures under section 7.01, we reject this argument. Section 7.02 provides that the City "*may*" (italics added) deviate from the procedures contained in section 7.01 where there is a need for immediate action and public or employee welfare or safety is imperiled. Thus, the fact that an employee's conduct is within the class of "cases that are referred to in Section 7.02 of this Article" (§ 7.03) does not mean that the City cannot choose to provide the employee with the due process protections contained in section 7.01 even if it is not obligated to do so.[4]

Rivera also contends that the doctrine of *ejusdem generis* supports interpreting section 7.02 of the MOU narrowly. " ' "*Ejusdem generis* applies whether specific words follow general words in a statute [or a contract [5]] or vice versa. In either event, the general term or category is 'restricted to those things that are similar to those which are enumerated specifically.' " ' " (*Audio Visual Services Group, Inc. v. Superior Court* (2015) 233 Cal.App.4th 481, 491.) As applied to this case, Rivera appears to argue that the doctrine of *ejusdem generis* supports the conclusion that the City was required to

---

[4]     The City placed Rivera on paid administrative leave pending the outcome of its investigation into her misconduct.

[5]     Although the doctrine of *ejusdem generis* is ordinarily applied to statutes, "the principle applies equally to contracts." (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1045, fn. 4.)

employ principles of progressive discipline because her conduct was not akin to "drunkenness, violence, [or] gross insubordination." (§ 7.02.) We agree that the doctrine of *ejusdem generis* supports the conclusion that the provision of the specific examples of drunkenness, violence, and gross insubordination in section 7.02 evinces an intent to restrict the meaning of the more general terms of "conduct [that] imperils the safety or welfare of the public, other employees, or said employee," to serious misconduct akin to the specific examples provided in section 7.02. However, because, for the reasons discussed below, Rivera's conduct *was* a species of serious misconduct akin to the types of serious misconduct specified in section 7.02, such an interpretation does not demonstrate that the trial court erred in determining that the exception to progressive discipline contained in sections 7.02 and 7.03 of the MOU applied.

> b.     *Rivera's conduct imperiled the safety or welfare of the public and other employees*

While Rivera alludes to the contractual interpretation arguments discussed above, her principal contention on appeal appears to be that her misconduct did not "rise to [the] level" of imperiling the safety or welfare of the public and other employees under sections 7.02 and 7.03.[6] This claim presents a mixed question of law and fact, which

---

6     We say "alludes" because, although Rivera refers to the contractual interpretation arguments in the text, she does not clearly contend that the trial court erred in interpreting the MOU. Rivera appears to offer these arguments in support of her primary contention on appeal, which is that her conduct was "not within the class of acts deemed by the [MOU] to [imperil] the public safety and welfare to the level it must reach in order to invoke the bargained-for exception to progressive discipline."

requires the application of law to fact.[7]  Such questions are reviewed under the clearly

erroneous standard if the inquiry is predominantly factual, but are reviewed de novo if the

application of law to fact is predominantly legal.  (*In re Collins* (2001) 86 Cal.App.4th

1176, 1181.)  Because Rivera's claim fails under any standard of review, we assume,

strictly for purposes of this opinion, that Rivera's claim presents a predominantly legal

question, and therefore review her claim de novo.  (*Telish*, *supra*, 234 Cal.App.4th at p.

1487 [questions of law are reviewed de novo in an appeal involving a petition for writ of

administrative mandamus].)[8]

It is undisputed that Rivera worked as a supervisor in a dispatch center managed

by the City's police department.  The communications center receives 911 calls from

citizens needing emergency assistance and provides communication assistance to both the

city's fire and police personnel acting in the field.  As the administrative hearing officer

stated in his decision, "[T]here was no dispute as to the critical nature of these dispatch

functions."

As a communications supervisor, Rivera was required to perform the duties

outlined in her job description, which include acting as a dispatcher in the center.

Despite the critical public safety nature of her employment, Rivera neglected her duties

---

[7]     Rivera presents no challenge to the trial court's factual findings that she engaged in misconduct.  Rather, she contends that her actions did not amount to conduct that "imperils the safety or welfare of the public, other employees, or said employee," under section 7.02 of the MOU.

[8]     We emphasize that we do not hold that Rivera's claim presents a predominantly legal question for which de novo review is appropriate.  Instead, we merely assume so in light of the fact that Rivera's claim fails under even the most generous standard of review.

for extended periods of time on eight separate occasions in March and April 2010. She repeatedly engaged in personal conversations for anywhere from thirty minutes to over three hours while on duty in the dispatch center, and in so doing, was unavailable to receive calls during these time periods. The trial court noted that there was evidence in the record that supported a finding that Rivera had engaged in the following misconduct:

> "On March 22nd[,] [Rivera] sat and spoke with an officer for over two hours . . . which meant that phone calls that would have come to her line were rerouted to other dispatchers or placed into the queue instead of being sent to her console for handling by her. . . . [¶] . . . [¶] On March 30th, apparently dispatch had received a very high volume of calls at about 3:00 in the morning as the result of a fire in the City of Chino. Meanwhile, [Rivera] was speaking to Corporal Perry for approximately half an hour, during which time calls were unanswered and went into the queue while [Rivera's] phone remained in the, quote, 'not ready,' close quote, position. [¶] . . . [¶] On April 21st[,] [Rivera] and Ms. Casanova spoke for approximately three hours. . . . [¶] Later in the same shift, [Rivera] stood at Ms. Casanova's console yet again and spoke to her on and off for another two hours. There was testimony presented that other employees often observed [Rivera] standing away from her console and location and speaking for lengthy periods of time with Ms. Casanova. And that while [Rivera] and Ms. Casanova spoke and were engaged in conversation with each other, they did not answer any 911 calls waiting in the queue, nor did [Rivera] assist any of the dispatchers who were attempting to handle a high volume of calls."

Finally, while Rivera asserts that this misconduct amounts to "*simple* misconduct," (italics added) there is nothing in the record that would support this characterization. Indeed, the trial court found that "overwhelming evidence" established that Rivera "*egregiously* neglected her duties, causing harm to the public service." (Italics added.) We agree.

12

Rivera worked in a department with critical public safety functions. Her serious misconduct in failing to perform her job duties on numerous occasions for extended periods of time imperiled the safety and welfare of the public and her fellow officers in the field, since she was not available to receive their communications. Accordingly, we conclude that the City was permitted to terminate Rivera's employment pursuant to the exception to progressive discipline contained in sections 7.02 and 7.03.

2. *The City's notice of termination provided Rivera with adequate notice of the reach of the proposed disciplinary procedure*

Rivera contends that the City's notice of termination violated her right to procedural due process because it did not provide her with " 'fair notice as to the reach of the [disciplinary] procedure.' " (Quoting *Brown v. State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1164, fn. 5 (*Brown*).) In *Brown*, the court stated:

> "Due process requires that the respondent be given 'notice . . . of the standards by which his conduct is to be measured' [citation] and 'fair notice as to the reach of the [disciplinary] procedure.' [Citation.] That requires that the respondent be given adequate notice both of the claimed legal standard and the events which are alleged to contravene it and an opportunity to challenge them. Where the cause alleged has potential application to a broad range of conduct, such as unprofessional conduct, the events alleged to contravene the charge do more than allege what must be proved. They also provide criteria by which the charge is narrowed." (*Ibid.*)

Rivera contends that the notice of termination was deficient because it did not put her on notice that "any allegation against her fell within the class of exceptions to progressive discipline that imperiled public safety and welfare."

We are not persuaded. As noted above, the City provided her with a notice entitled "Notice of Final Determination - Termination" that explained that the City was

13

terminating Rivera's employment pursuant to Article VII of the MOU and outlined the three grounds that formed the basis of that termination. Article VII of the MOU states that the City shall use the principles of "progressive discipline, except in cases" (§ 7.02) in which the employee's conduct "imperils the safety or welfare of the public, other employees, or said employee . . . ." (§ 7.03.)

In informing Rivera that she was being terminated pursuant to Article VII of the MOU, as well as outlining the conduct on which her termination was based, the notice adequately informed Rivera that the City determined that her conduct fell within the exceptions to progressive discipline outlined in sections 7.02 and 7.03. The notice of termination thus provided Rivera with notice of the " 'reach of the [disciplinary] procedure,' " by informing Rivera of the "claimed legal standard and the events which [were] alleged to contravene it . . . ." (*Brown*, *supra*, 166 Cal.App.3d at p. 1164, fn. 5.)

Accordingly, we conclude that the City's notice of termination provided Rivera with adequate notice of the reach of the proposed disciplinary procedure.

B.    *The hearing officer's findings were sufficient to explain the basis of the hearing officer's decision upholding Rivera's termination*

Rivera contends that the hearing officer's decision must be vacated and the matter remanded for further administrative proceedings because the officer's findings supporting termination were insufficient under *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506 (*Topanga*). Rivera's claim presents a question of law and thus, our review is de novo. (See *Telish*, *supra*, 234 Cal.App.4th at p. 1487.)

14

In *Topanga*, our Supreme Court held that in administrative proceedings for which judicial review is available pursuant to administrative mandamus proceedings under Code of Civil Procedure, section 1094.5,[9] "the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga*, *supra*, 11 Cal.3d at p. 515.) The *Topanga* court reasoned that the requirement that the agency provide such findings serves several purposes, including: "facilitat[ing] orderly analysis" by the agency; enabling a "reviewing court to trace and examine the agency's mode of analysis"; enabling the parties to determine whether and on what basis to seek judicial review; and "serv[ing] a public relations function by helping to persuade the parties that administrative decision-making is careful, reasoned, and equitable." (*Id.* at pp. 516-517.) Although an agency's findings " 'need not be stated with the formality required in judicial proceedings' [citation], they nevertheless must expose the [agency's] mode of analysis to an extent sufficient to serve the[se] purposes . . . ." (*Id.* at p. 517, fn.16.) In applying *Topanga*, courts have stated that "[a]dministrative agency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein." (*Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954.)

The hearing officer rendered factual findings with respect to each of the three specific charges that form the basis for the City's termination of Rivera's employment. Specifically, the hearing officer found that Rivera "knowingly misused the KRONOS

---

9       It is undisputed that the administrative proceedings in this case are subject to judicial review pursuant to Code of Civil Procedure, section 1094.5.

15

system on . . . three dates. . . . and as a consequence received overtime she was not entitled to receive," (underline omitted) neglected her duties on the specified dates in March and April 2010, and "improperly accessed and utilized JIMSNET in February of 2010 . . . ."  In issuing these findings, the hearing officer "bridge[d] the analytic gap," between the evidence presented at the hearing concerning Rivera's misconduct, and the "ultimate decision or order," under review, i.e., her termination.  (*Topanga*, *supra*, 11 Cal.3d at p. 515.)

Rivera contends that the hearing officer's decision is deficient because the hearing officer failed to cite *evidence* in support of the officer's factual findings related to her misuse of the Kronos system and the neglect of her duties.[10]  Even assuming that *Topanga* requires that an administrative adjudicator cite to *evidence* in addition to "set[ting] forth *findings*," (*Topanga*, *supra*, 11 Cal.3d at p. 515, italics added), the hearing officer's decision in this case does discuss the evidence on which the officer based his factual findings.  With respect to the Kronos system, the decision states that Rivera "logged into KRONOS at the end of the shift and cancelled her auto-deduction notwithstanding the fact she had in fact taken time away from her duties for 30-minutes

---

10     In her *reply* brief, Rivera also contends that the administrative hearing officer's findings are insufficient with respect to the issue of whether Rivera's misconduct imperiled the safety or welfare of the public, other employees, or herself.  Rivera failed to raise this contention in her opening brief in her legal argument challenging the sufficiency of the hearing officer's findings and presents no reason for doing so for the first time in reply.  Accordingly, we decline to consider this contention.  (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [" ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before" ' "].)

or more."  Further, the hearing officer stated that Rivera's explanation for the discrepancy was "simply not persuasive."  With respect to the neglect of duties issue, the hearing officer cited testimony and written statements concerning Rivera's failure to perform her job duties on the dates in question and found that Rivera's explanations were evasive and inconsistent.  More generally, the hearing officer's 18-page written decision, contains 29 findings of fact in support of its findings with respect to the three charges, as well as 49 endnotes citing to the evidence that supports the findings.  In sum, the hearing officer's decision plainly complies with *Topanga* and bears no resemblance to the "boilerplate rejections" as to medical necessity relevant to the administrative mandamus proceedings in *Glendale Memorial Hospital & Health Center v. State Dept. of Mental Health* (2001) 91 Cal.App.4th 129, 140, upon which Rivera relies.

Accordingly, we conclude that Rivera is not entitled to vacatur of the hearing officer's decision upholding her termination on the ground that the hearing officer's findings were insufficient.

C.      *The City did not abuse its discretion in terminating Rivera's employment*

Rivera contends that the City abused its discretion in terminating her employment.

In *County of Siskiyou v. State Personnel Bd.* (2010) 188 Cal.App.4th 1606, 1615, the court outlined the law governing a public employee's challenge to the degree of punishment imposed by a public agency due to employee misconduct:

> " 'The public is entitled to protection from unprofessional employees whose conduct places people at risk of injury and the government at risk of incurring liability.' [Citation.]  Thus, 'in the context of public employee discipline,' the 'overriding consideration' is 'the extent to which the employee's conduct resulted in, or if repeated is likely to

17

result in, "harm to the public service." [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence. [Citation.]' [Citations.] [¶] . . . [¶] . . . ' " 'Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.' [Citations.]" [Citation.]' (*Ibid.*) Thus, if reasonable minds may differ as to the propriety of the penalty, there is no abuse of discretion." (*Ibid.*)

We concluded in part II.A., *ante*, that Rivera's serious and repeated misconduct in failing to perform her job duties for extended periods of time imperiled the safety and welfare of the public and her fellow officers. In addition to this misconduct, the trial court found, that Rivera also misused the City's timekeeping system, resulting in her being paid wages greater than she had earned and that she improperly accessed a criminal records database for personal reasons.[11] While Rivera points to her positive 19-year employment tenure with the City, her misconduct imperiled public safety, was multifaceted, and occurred on multiple occasions. Under these circumstances, a reasonable decision maker could determine that Rivera's termination was warranted. (See *County of Siskiyou v. State Personnel Bd.*, *supra*, 188 Cal.App.4th at p.1615 [listing " ' "harm to public services," ' " the " 'circumstances surrounding the misconduct,' " and the " 'likelihood of [the misconduct's] recurrence,' " as among factors to consider in determining whether administrative agency abused its discretion in disciplining an employee].)

Accordingly, we conclude that the trial court did not err in failing to set aside her termination on the ground that the City abused its discretion in imposing such discipline.

[11]    Rivera presents no challenge to such findings on appeal.

18

IV.

DISPOSITION

The judgment is affirmed.  Rivera is to bear costs on appeal.


AARON, J.

WE CONCUR:

McDONALD, Acting P. J.

McINTYRE, J.