Filed 12/12/25  Uso v. County of El Dorado CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| LON USO, as Trustee, etc., | C101427 |
| Plaintiff and Appellant, | (Super. Ct. No. 23CV0385) |
| v. | |
| COUNTY OF EL DORADO, | |
| Defendant and Respondent; | |
| DAVID CRAMER, | |
| Real Party in Interest and Respondent. | |

From 2015 to 2020, plaintiff Lon Uso, as trustee of the Uso Family Trust, constructed several accessory buildings and had begun constructing an accessory dwelling unit (ADU) on his property, which was zoned "open space."  In 2020, El Dorado County Code Enforcement opened a code enforcement case on the basis that the buildings were unpermitted.  Uso applied for a conditional use permit (CUP) to allow the

1

buildings, which the El Dorado County Planning Commission (Planning Commission) approved.  An area resident appealed the approval of the CUP, and the El Dorado County Board of Supervisors (Board) approved the appeal.  Uso petitioned for a writ of mandate in the superior court, which the superior court denied.

Uso appeals from the denial of his petition for a writ of mandate.  He contends the Board failed to find that construction of the buildings had a negative impact on the surrounding conforming parcels and the area overall, and substantial evidence would not support such a finding.  In the alternative, he argues that he had a vested right to construct the buildings because he spent money and energy in reliance on a building permit, which had been issued to construct a primary residence on the property.

A review of the record reveals that the Board made the required finding, and that substantial evidence supports the finding.  Uso has forfeited his vested rights argument, and it fails in any event.  Accordingly, we affirm the denial of the petition for writ of mandate.

## FACTS AND PROCEEDINGS

*Factual Background*

In 2015, Uso sought and obtained a permit to build a single-family residence on his 9.5-acre property in Cool (property); the residence was constructed in 2016.  The property had a land use designation and was zoned as "open space," which was intended to "provide a medium whereby the essential open space needs of the citizens of the county may be provided for."  (El Dorado County Zoning Ord. (2013 Zoning Ordinance), § 17.68.010.)  " 'Open space land' " was defined as "parcels or areas of land which are generally unimproved and devoted to and essential for" natural resource preservation, preservation of agricultural production, preservation of recreational enjoyment areas, preservation of wildlife habitat, protection of the public against seismic, geologic, and geographical hazards, and protection of unusual or unique scenic values.  (*Id.*, § 17.68.020.)

2

Uso installed a vineyard on the property, which included an estimated 800 grape vines and was characterized in a subsequent hearing as "pretty darn big" and as not "look[ing] like personal use vines."

Uso also constructed several unpermitted buildings on the property. In 2015, he constructed a barn to house livestock. From 2017 to 2019, he constructed two carports, a workshop, and a wine processing building. And in 2020, Uso began constructing an ADU. In 2020, following a complaint regarding the unpermitted buildings, a code enforcement case against Uso was opened.

On June 23, 2020, Uso filed an application for a building permit for the ADU, and on January 5, 2021, Uso applied for a CUP to allow the existing uses and the ADU.

On November 10, 2022, the Planning Commission approved the CUP. A staff report recommending approval observed that 2013 Zoning Ordinance section 17.68.040 allowed for one single-family residence and agricultural and accessory buildings on parcels zoned "open space."[1] Although the ordinance was updated in December 2015 to prohibit residential dwellings, accessory structures, or agricultural buildings on such parcels, Zoning Ordinance section 130.61.050 in effect at that time allowed for approval of CUPs that changed or expanded legal nonconforming uses in certain circumstances, including, as relevant here, where "[t]he change or expansion of the nonconforming use will not have a negative impact on the surrounding conforming uses and the area overall."

---

[1] 2013 Zoning Ordinance section 17.68.060, subdivision (B) prohibited any building or structure from being constructed on a parcel zoned "open space" that was less than 10 acres. The staff report recommending approval of the CUP indicated that the property was 10.54 acres, which was reflected on a site plan prepared for the CUP. However, the assessor's parcel map and the site plan from 2015 both indicated that the property was actually 9.5 acres. In a subsequent hearing before the Board, both Uso and the Deputy Director of the Planning Commission acknowledged that the property was 9.5 acres.

3

The staff report observed that there were undeveloped, open-space-zoned parcels to the north and west of Uso's property, and residential-zoned parcels containing residential uses to the property's east and south. The report further opined that the Planning Commission could find: "The change or expansion of the nonconforming use will not have a negative impact on the surrounding conforming uses and area overall as the existing, unfinished, unpermitted ADU and accessory buildings would not significantly intensify the number of the buildings and the expanded use is not anticipated to create any public safety hazards or impede traffic flow into and out of the existing driveway. Further, the proposed expansion would be consistent with existing residential uses in the vicinity including both to the immediate east and south." The CUP was approved on the condition, among others, that Uso not operate a commercial or micro-winery.

On November 22, area resident David Cramer timely appealed the Planning Commission's decision to the Board. The appeal alleged that the approved CUP did not comply with the definition of "open space," and authorized a commercial winery.

On December 15, the El Dorado County Planning and Building Department issued a report recommending that the Board deny the appeal and uphold the approval of the CUP. The report reiterated that the additional buildings on Uso's property were evaluated as an expansion of the legal nonconforming use in accordance with the applicable zoning ordinance, and noted that the CUP expressly prohibited the operation of a commercial winery on the property.

*Appeal Hearing*

On January 10, 2023, the Board held a hearing on the appeal. Cramer argued that the Planning Commission had improperly issued the permit to build the primary residence on the property because the 2013 Zoning Ordinance prohibited construction of any buildings on parcels less than 10 acres. Cramer further argued that the property did

4

not "fill the purpose of open-space land" because the designation was intended to provide for open space for residents, and no structures were allowed on the property.

Uso disputed that the building permit for his residence was improperly issued; he acknowledged that the property was 9.5 acres but asserted that the prohibition on constructing buildings on parcels smaller than 10 acres "came some time later."[2] Uso argued that the buildings on his property did not negatively affect his neighbors, but rather he benefitted his neighbors by maintaining a vineyard on the property. Uso added that he believed he could build "ag structures" without a permit, but acknowledged that he should have obtained a permit before beginning construction on the ADU. He alleged that Cramer appealed the approval of the CUP because Cramer held a grudge against him.

*Board Deliberations and Decision*

At the outset of the Board's deliberations, county counsel explained that the existing residence was a nonconforming structure, and the appeal concerned the Planning Commission's approved expansion of the nonconforming use based on its determination that expansion would not have a negative impact on the surrounding conforming uses in the area overall. Counsel further advised the Board that it could consider any written materials received by the Planning Commission and any testimony presented at the hearing, and it could consider issues beyond those raised by the appeal in determining whether the nonconforming use should be expanded.

Supervisor Lori Parlin observed that it appeared based on the 2013 Zoning Ordinance that Uso was not authorized to construct his residence or any other building on the property, although she clarified she was not intending to ask Uso to remove a house that had been permitted. She found it to be "pretty clear" that Uso knowingly constructed

---

[2] Uso provided no support for that assertion, and we are not aware of anything in the record that supports it.

5

buildings without first obtaining permits, and she expressed concern that Uso was generally attempting to bypass approval processes before asking for forgiveness, and that approving the CUP would amount to rewarding bad behavior.

Supervisor Parlin also reasoned that Uso was improperly attempting to use property zoned open space as a residential lot. She noted, "the intent of open space is not a lot," yet "what Mr. Uso is proposing here for us to say is okay is a lot." She added that the surrounding parcels had "expectations of open space," and there were undeveloped parcels around Uso's that were "more like what open space is supposed to be."

Supervisor Wendy Thomas, chair of the Board, recognized that the Board was required to make a finding regarding whether the expanded use would have a negative impact on the conforming uses around it. She stated that she "would have a challenge with seeing the accessory, the barns, you know, the carports that are not legal."

Supervisor Brooke Laine agreed that Uso's primary residence should not have been permitted, and she expressed concern that approving the ADU would send the message that the County would approve other improperly built residences and ADUs.

Following a break in proceedings, the Board voted to adopt findings drafted by Planning Commission staff intended to reflect the concerns raised by the Board, as follows: "[T]he change or expansion of the non-conforming use will have a negative impact on the surrounding conforming uses and area overall as the existing unfinished, unpermitted ADU and five accessory buildings are out of character with the definition, intent and vision for open space as discussed in the board appeal hearing and written testimony before the Planning Commission. Granting the expansion of the non-conforming use would encourage improper development without following the appropriate county land use processes. [¶] Lastly, the proposed expansion and accessory buildings related to wine processing are out of character with the surrounding neighborhood and uses."

*Petition for Writ of Mandate*

Uso filed a petition for a writ of administrative mandamus in the superior court, which the court denied following briefing and a hearing.

Uso timely filed a notice of appeal from the ensuing judgment. The case was fully briefed in September 2025 and assigned to the current panel the following month.

**DISCUSSION**

I

*Standard of Review*

"Trial court review of an administrative decision is governed by Code of Civil Procedure section 1094.5. Subdivision (b) of section 1094.5 limits the court's inquiry 'to the questions whether the [administrative tribunal] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.' In determining whether there was an abuse of discretion, the reviewing court considers whether the administrative tribunal proceeded in the manner required by law, whether its order or decision is supported by the findings, and whether the findings are supported by the evidence. (*Ibid.*)

"Because the [Board] is vested with quasi-judicial powers, the trial court may not exercise its independent judgment, but must uphold the Board's findings if they are supported by substantial evidence. In applying the substantial evidence test, the trial court must examine all relevant evidence in the entire record, considering both the evidence that supports the Board's decision and the evidence against it, in order to determine whether that decision is supported by substantial evidence. [Citations.] This does not mean, however, that a court is to reweigh the evidence; rather, all presumptions are indulged and conflicts resolved in favor of the Board's decision. [Citation.]

"These standards 'do not change on appellate review from a trial court's denial of a petition for writ of mandate from a decision of the [Board]; an appellate court independently determines whether substantial evidence supports the [Board's] findings, not the trial court's conclusions.' [Citation.] However, insofar as an appeal from an administrative mandamus proceeding presents questions of law, our review is de novo." (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487.)

II

*Board Determination*

Uso contends the Board's approval of the appeal was based on its desire to punish his bad conduct, and substantial evidence does not support its negative impact finding. The record refutes Uso's argument.[3]

Initially, we note that the Board expressly found that expansion of the nonconforming use would have a negative impact on the surrounding conforming uses and area overall because the structures "are out of character with the definition, intent and vision for open space" and "are out of character with the surrounding neighborhood and uses." Thus, although the Board found that expansion of the nonconforming use would encourage improper development without following the appropriate county land use processes, the Board also expressly found that construction of the buildings at issue would negatively affect the surrounding conforming uses, which refutes Uso's argument to the contrary.

---

[3] The County asks us to summarily affirm the Board's decision because Uso's opening brief violates various appellate procedural rules and practice standards. We need not and do not address the County's request because, as we will explain, Uso's contentions clearly fail on their merits.

Further, substantial evidence supports the Board's negative impact finding. As to the finding that the proposed nonconforming uses "are out of character with the definition, intent and vision for open space," Supervisor Parlin observed the undeveloped open space parcels around Uso's property were "more like what open space is supposed to be," the wine processing building did not "match[] the definition of what open space is supposed to be about," and some neighbors might not approve of multiple structures on a property zoned open space based on different "expectations of open space." Supervisor Parlin pointedly laid out her concern: "[Y]ou purchased a piece of open-space land, and that's not residential land. It's different. And yet, I feel like looking at what you're trying to do, what you've already done, you're trying to treat this land as a residential piece of property, and it's not. It's open space."

The 2013 Zoning Ordinance provided that the purpose of "open space" zoning was "to provide a medium whereby the essential open space needs of the citizens of the county may be provided for." (2013 Zoning Ordinance, § 17.68.010.) Such parcels were intended to be "generally unimproved" and devoted to preservation of natural areas and protection from natural hazards. (*Id.*, § 17.68.020.) Indeed, at the time the principal residence was constructed on the property, construction of *any* buildings was expressly prohibited on parcels smaller than 10 acres (*id.*, § 17.68.060, subd. (B)); Uso's parcel undisputably fit that description. Substantial evidence amply supports the Board's finding that construction of multiple buildings on the 9.5-acre property was "out of character with the definition, intent and vision for open space."

Substantial evidence also supports the finding that the construction at issue would have a negative impact on the surrounding conforming uses because it was "out of character with the surrounding neighborhood and uses." The staff report recommending approval of the CUP observed there were "Open Space uses" to the north and west of the property, and residential uses to the south and east. The record includes a vicinity map and general plan land use designation map, which both demonstrate the undeveloped

9

nature of the areas to the north and west of the property. In recommending approval of the CUP, the staff report opined that the nonconforming uses at issue in the CUP application were consistent with the residential uses to the south and east. Those residential areas, however, were not zoned "open space," and Uso's property was not zoned "residential." Rather, Uso's property was zoned "open space," like the areas to the north and west. Thus, while the staff report opined that the evidence would support a finding that Uso's proposed uses were consistent with the residential uses on parcels adjacent to his, it is equally true that the proposed uses were *inconsistent* with the open-space uses on parcels adjacent to his, and contrary to the express legislative purpose of open space zoning. Substantial evidence supports the finding that constructing multiple buildings in a parcel zoned "open space" would negatively affect those residents living on adjacent parcels who have the reasonable expectation of living next to a "generally unimproved" parcel devoted to the preservation of natural areas (2013 Zoning Ordinance, § 17.68.020) for the purpose of tending to their "essential open space needs" (*id.*, § 17.68.010).

### III

### *Vested Right*

Uso argues that he had a vested right to construct a residence and accessory buildings on the property because the construction thereof was authorized by the 2013 Zoning Ordinance, and he spent money and effort in reliance on a building permit. Uso failed to raise this argument during the proceedings before the Board or in the trial court, and therefore he forfeited his argument. (*Doe v. Occidental College* (2019) 37 Cal.App.5th 1003, 1018; *Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 587; *Owen v. Sands* (2009) 176 Cal.App.4th 985, 995.) Uso's argument fails in any event.

A party acquires a vested right in a building permit if they have " ' "performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government.' " ' (*Stewart Enterprises, Inc. v. City of Oakland* (2016) 248

10

Cal.App.4th 410, 418.) Uso contends he obtained a vested right to build accessory buildings because he had been issued a building permit for the primary residence. But a building permit to construct a primary residence does not provide a vested right to build other buildings not included in the permit. Uso provides no argument or authority suggesting that a building permit for a principal residence creates a vested right to construct other buildings. By the time Uso applied for a CUP to construct the accessory buildings, even assuming for the sake of argument that the 2013 Zoning Ordinance, section 17.68.040 allowed for one single-family residence and agricultural and accessory buildings on parcels zoned "open space," and also that the additional provisions prohibiting such improvements on a parcel smaller than 10 acres were somehow not applicable, it is nevertheless true that Uso was no longer authorized to build additional structures. Uso's vested right argument fails.[4]

---

[4] Uso notes that the County argued in the trial court that he had "unclean hands," and argues that doctrine does not apply here. Based on our conclusions *ante*, we need not and do not address that argument.

## DISPOSITION

The judgment is affirmed.  The County shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

                                                     /s/
                                                Duarte, J.

We concur:

     /s/
Mauro, Acting P. J.

     /s/
Wiseman, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.